1  Todd C. Atkins (CASB 208879)
   *tatkins@atkinsdavidson.com*

2  ATKINS & DAVIDSON, APC
   701 B Street, Suite 1170

3  San Diego, CA 92101
   619. 255.2380

4  Fax: 619.231.4984

5
   Joseph J. Siprut*

6  *jsiprut@siprut.com*
   James M. McClintick*

7  *jmcclintick@siprut.com*

8  SIPRUT PC
   122 South Michigan Ave.

9  Suite 1850
   Chicago, Illinois 60603

10 312.588.1440
   Fax: 312.427.1850

11

12 *Pro hac vice* admittance to be sought

13 *Counsel for Plaintiffs and the Proposed Putative Classes*

14          **IN THE UNITED STATES DISTRICT COURT**

15        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

16

17 RACHEL FREZZA and MAURO            CV12        0237
   RODRIGUEZ, on their own behalf and all

18 others similarly situated,               Case No.

19                 Plaintiffs,         **CLASS ACTION COMPLAINT FOR:**

20        v.                           **Violation of Cal. Civ. Code § 1798.81**
                                       **Violation of Cal. Civ. Code § 1770**
21 GOOGLE INC.,

22                 Defendant.          DEMAND FOR JURY TRIAL

23

24                    **CLASS ACTION COMPLAINT**

25        Plaintiffs Rachel Frezza and Mauro Rodriguez (collectively, "Plaintiffs") bring this class

26 action complaint against Defendant Google Inc. ("Google" or "Defendant") on behalf of

27

28

1    themselves and all others similarly situated, and complain and allege upon personal knowledge

2    as to themselves and their own acts and experiences, and, as to all other matters, upon

3    information and belief, including investigation conducted by their attorneys.

### I.    NATURE OF THE ACTION

4

5          1.    Although perhaps best known for its search engine, Google took in more than $28

6    billion in 2010 from its various advertising programs and products, accounting for 99% of the

7    corporation's total revenues.[1]  One such advertising product was Google Tags. Google Tags was

8    an online feature that was designed to enhance the appeal of a business and more effectively

9    promote the services of that business on the Web.

10         2.    Google knowingly and repeatedly deceived business owners and consumers

11   across the nation by luring them into signing up for a supposedly "free" trial of Google Tags.  In

12   offering this promotion to businesses in simple and straightforward language, Google gave these

13   merchants every reason to believe that they could try Google Tags without financial risk or

14   obligation.  This service, as consumers learned the hard way, turned out to be anything *but* free.

15         3.    Under the terms of the trial offer as represented by Google, consumers could try

16   Google Tags for a 30-day period and then cancel without charge at any time prior to the end of

17   that period.  In reality, however, Google charged merchants during the 30-day period and then

18   asserted that the trial offer consisted merely of a $25 discount off the total price of the service.

19         4.    Making matters worse, many consumers have discovered that they cannot remove

20   their credit card information from Google's billing system – even though Google Tags was

21   abolished in early 2011.  In addition, Google has refused to delete the credit card information

22   associated with each of these merchants' accounts.  This conduct violates California law, and

23   places consumers, including Plaintiffs and the putative Classes, at a heightened risk of identity

24   theft, fraud, and catastrophic financial loss.

25

26   _____

27   [1] *Google Announces Fourth Quarter and Fiscal Year 2010 Results and Management Changes*, GOOGLE INVESTOR RELATIONS, Jan. 20, 2011,http://investor.google.com/earnings/2010/Q4_google_earnings.html.

28

CLASS ACTION COMPLAINT

1      5.      Accordingly, this nationwide class action seeks damages for the injuries,

2   expenses, and financial losses suffered by Plaintiffs and members of the Classes as a result of

3   Google's conduct.

## II.   JURISDICTION AND VENUE

5      6.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  In the

6   aggregate, Plaintiffs' claims and the claims of the other members of the Classes exceed

7   $5,000,000 exclusive of interest and costs, and there are numerous members of the Classes who

8   are citizens of states other than Google's States of citizenship.

9      7.      Venue is proper in this District pursuant to 28 U.S.C. § 1301(a)(2) and 1391(b)(2)

10  as: a substantial part of the events and/or omissions giving rise to the claims emanated from

11  activities within this District, and Google conducts substantial business in this District.

## III.   PARTIES

13  *Plaintiffs*

14     8.      Rachel Frezza ("Frezza") is a natural person and a citizen of the State of North

15  Carolina.

16     9.      Mauro Rodriguez ("Rodriguez") is a natural person and a citizen of the State of

17  North Carolina.

18  *Defendant*

19     10.     Google is a multinational public corporation that provides an array of internet-

20  based products and services, including advertising technologies, e-mail, and various online

21  productivity tools in addition to its ubiquitous Web search engine.  Its principal office is located

22  in Mountain View, California.  Google indexes billions of Web pages, and its search engine

23  dominates the United States market.  In 2010, Google took in more than $29 billion in revenue

24  and more than $8 billion in profits.[2]

25

26  _____

27  [2] *Id.*

28

CLASS ACTION COMPLAINT

## IV.  FACTUAL BACKGROUND

*The Purpose and Features of Google Tags*

11.  From February 2010 through April 2011, Google offered a service called "Google Tags" to merchants in cities across the United States. The basic idea behind this service was to provide a way for a business that advertised its products or services on the web to showcase one or more of the business's distinguishing features and thereby increase the number of visitors to its website.

12.  A consumer who used Google Tags was able to set the name of his or her business apart visually from the numerous other listings that would generally result from entering the relevant terms in the Google search engine or "Google Maps" field. The name of the business was made to stand out from the others through the use of a bright-yellow "tag" icon that appeared immediately to the left of the listing. Accompanying this tag was additional information about the business, such as promotions, photos, videos, menus, or a link to the business's website.

13.  The fee for use of the tag was $25 per month for each business listing, and this "flat monthly fee" remained constant regardless of how often an internet user viewed the enhanced listing or actually clicked on it for more information. At any time during the month-long period, the user of the tag was permitted to add a tag to an additional listing, change the content of the tag, or remove it altogether.

*The "Free" Trial Period of Google Tags*

14.  As a means of introducing Google Tags and enticing subscribers to this service, Google launched a "trial" period in July of 2010. Under the terms of this initial offering, consumers were led to believe that they could append a Google Tag to one or more of their listings—absolutely free of charge—for a 30-day period. Nevertheless, Google required these new users to enter their information from a valid U.S. credit card in order to activate the service.

15.     In reliance on the simple and straightforward language in this promotion, numerous business owners, including Plaintiffs, signed up for the "Google Tags" service with the understanding that they would not be charged for use of this service during the 30-day period. The promotion did not contain any qualifying language or other "fine print" suggesting that users would be charged for any part of the Google Tags service during this initial trial period.

16.     At the conclusion of the supposedly "free" trial period, however, Plaintiffs and other members of the Class discovered that Google had charged them for their use of multiple tags during all or most of this period. When Plaintiffs and the other members of the Class sought an explanation from Google's customer service department, they were told that the trial offer consisted merely of a one-time, $25 discount — as opposed to genuinely "free" use of the tags during the 30-day period. This was not disclosed in the terms of Google's promotional offer.

*Google's Unlawful Retention of Consumers' Credit Card Information*

17.     Unfortunately, this is not the full extent of the problems associated with Google Tags. In addition to the practices described above, Google retained the credit card information of those consumers who signed up for the "free" trial of the Google Tags service, even though Google discontinued the service itself on April 29, 2011.

18.     Google refused to provide these consumers with a way to delete their credit card information from Google's electronic billing records, other than advising them to cancel the card itself or replace the existing information with new credit card information. As a result, the Plaintiffs' sensitive, proprietary information remains needlessly stored among Google's electronic billing records, exposing these Plaintiffs to an elevated and very real risk of fraud, identity theft, and catastrophic financial loss.

////

*Facts Pertaining to Plaintiff Rodriguez*

19.    On November 18, 2010, Rodriguez signed up for what Google represented to be a "free" 30-day trial of Google Tags in order to promote the services of his employer, an auto dealership.  At the time that he decided to use this service, he was told that he would not be charged during the initial 30-day period, and that he could cancel anytime.  As a condition of using this service, Rodriguez provided his credit card number to Google.

20.    On December 10, 2010 — less than 30 days after he signed up for the service — Rodriguez cancelled his trial subscription to Google Tags.

21.    Soon thereafter, he discovered that Google had charged $52.00 to his credit card in violation of the terms of the "free" trial offer.  In addition, Google retained his credit card number in its electronic billing records after he discontinued the service and refused to delete it.

*Facts Pertaining to Plaintiff Frezza*

22.    In the fall of 2010, Frezza signed up for Google Tags after reading the promotional offer for a "free" trial of the service.  Frezza had hoped to use the Google Tags service to better advertise her small holistic healing business, and she assumed – based on the language in the offer – that she had nothing to lose by singing up for the supposedly "free" trial.

23.    Despite the guarantee of a free 30-day trial, Frezza found that Google charged her credit card, which she had previously provided to Google for other transactions, during this initial period.

24.    When she contacted Google to dispute the charge and request that her credit card number be deleted, a Google representative informed her that her credit card information could not be deleted from its electronic billing records unless she cancelled the credit card altogether.

25.    On information and belief, Google continued to retain her credit card number in its electronic records and refused to delete it until the card expired.

1

## V.   CLASS ACTION ALLEGATIONS

2      26.     Plaintiffs bring Counts I, III, and V, as set forth below, on behalf of themselves

3   and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal

4   Rules of Civil Procedure on behalf of a class defined as:

5
> All consumers nationwide who signed up for a free 30-day trial of
6
> Google Tags and who were nevertheless charged for their use of
> the tags during this period (the "Contract Class").
7

8   Excluded from the Contract Class are Google and its subsidiaries and affiliates; all persons who

9   make a timely election to be excluded from the Class; governmental entities; and the judge to

10  whom this case is assigned and any immediate family members thereof.

11     27.     Plaintiffs bring Counts II, III, and IV, as set forth below, on behalf of themselves

12  and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal

13  Rules of Civil Procedure on behalf of a second class defined as:

14
> All consumers nationwide who signed up for a "free" 30-day trial
15
> of Google Tags and whose credit card information was retained by
> Google after their accounts were closed (the "Credit Card Class").
16

17  Excluded from the Credit Card Class are Google and its subsidiaries and affiliates; all persons

18  who make a timely election to be excluded from the Class; governmental entities; and the judge

19  to whom this case is assigned and any immediate family members thereof.

20     28.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because

21  Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as

22  would be used to prove those elements in individual actions alleging the same claims.

23     29.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the

24  Classes are so numerous that individual joinder of all members of the Classes is impracticable.

25  On information and belief, there are thousands of business owners who have been damaged by

26  the misleading language in the terms of Google's trial offer as well as Google's wrongful

27  retention of their credit card information.  The precise number of members of the Classes and

28

CLASS ACTION COMPLAINT

-7-

their addresses are presently unknown to Plaintiffs, but may be ascertained from a review of Google's electronic billing records associated with subscribers to its "free" 30-day trial of its Google Tags service. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

30. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

    (a) whether Google engaged in the conduct as alleged herein;

    (b) whether Plaintiffs and the Classes are entitled to compensatory or other forms of damages, and other monetary relief and, if so, in what amount(s); and

    (c) whether Plaintiffs and the Classes are entitled to equitable relief, including but not limited to restitution and injunctive relief.

31. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other members of the Classes because, among other things, all members of the Classes were comparably injured through the uniform misconduct described above.

32. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the members of the Classes that they seek to represent; they have retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

33. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Google has acted or refused to act on grounds generally applicable to Plaintiffs and the members

1  of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as

2  described below.

3        34.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is

4  superior to any other available means for the fair and efficient adjudication of this controversy,

5  and no unusual difficulties are likely to be encountered in the management of this class action.

6  The damages or other financial detriment suffered by Plaintiffs and members of the Classes are

7  relatively small compared to the burden and expense that would be required to individually

8  litigate their claims against Google, so it would be impracticable for members of the Classes to

9  individually seek redress for Google's wrongful conduct. Even if members of the Classes could

10 afford individual litigation, the court system could not. Individualized litigation creates a

11 potential for inconsistent or contradictory judgments, and increases the delay and expense to all

12 parties and the court system. By contrast, the class action device presents far fewer management

13 difficulties, and provides the benefits of a single adjudication, economy of scale, and

14 comprehensive supervision by a single court.

15       35.    Plaintiffs reserve the right to revise the definitions of each Class based upon

16 information learned through discovery.

## VI.  CLAIMS ALLEGED

### *THE CONTRACT CLASS CLAIMS*

### COUNT I
### Breach of Contract
### (On Behalf of the Contract Class)

21       36.    Plaintiffs adopt and incorporate by reference paragraphs 1-33 of this Complaint as

22 if fully set forth herein.

23       37.    In accepting Google's promotional offer and submitting their credit card

24 information as required by the terms of the promotion, Plaintiffs entered into a contractual

25 agreement with Google.

26       38.    The contract between Plaintiffs and Google is a valid and enforceable contract.

39.   Plaintiffs have satisfied all conditions precedent pursuant to the Contract.

40.   Plaintiffs are not in breach of the Contract.

41.   Google has breached the Contract by charging these merchants for use of Google Tags during the 30-day trial period, despite an explicit promise in the original offer that it would not do so.

42.   As a result of the foregoing, Plaintiffs and the Contract Class have suffered damages and will in the future suffer damages caused by Google's breach of the Contract. Plaintiffs and the Contract Class are entitled to damages in an amount to be determined at trial.

### COUNT II
### Unjust Enrichment
### (In the Alternative to Count I)
### (On Behalf of the Contract Class)

43.   Plaintiffs adopt and incorporate by reference paragraphs 1-33 of this Complaint as if fully set forth herein.

44.   Google has received a benefit from Plaintiffs and each of the other members of the Contract Class by improperly charging these consumers fees for their use of the Google Tags service during what Google represented to be a "free" trial period.

45.   Google has knowingly appreciated and accepted this benefit of improperly collected usage fees, which has resulted in and continues to result in an inequity to Plaintiffs and each of the members of the Contract Class.

46.   Google's appreciation and acceptance of this benefit is inequitable.

47.   As a result of Google's unjust enrichment, Plaintiffs and each of the members of the Contract Class have suffered damages and will in the future suffer damages caused by the misconduct of the Defendant.  Plaintiffs and each of the members of the Contract Class seek full disgorgement and restitution of Google's enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

CLASS ACTION COMPLAINT

## COUNT III
### Violation of the California Consumers Legal Remedies Act,
### Cal.Civ.Code § 1750, *et seq.*
### (On Behalf of the Contract Class)

48.     Plaintiffs adopt and incorporate by reference paragraphs 1-33 of this Complaint as if fully set forth herein.

49.     The California Consumers Legal Remedies Act ("CCLRA") provides, in pertinent part, that

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
>
> ....
>
> Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

Cal.Civ.Code § 1770(a)(13).

50.     The members of the Contract Class signed up for a trial period of the Google Tags Service on the strength of language in the promotion stating that use of Google Tags would be free for the initial 30-day period.

51.     Despite the clear and explicit promise contained in the language of the Google Tags promotion, Google charged the Plaintiffs for use of Google Tags during this allegedly "free" trial period.

52.     By advertising Google Tags as free for a 30-day period and then unexpectedly charging subscribers for use of the service, Google made a false and misleading statement of fact about the existence of a price reduction.

53.     The false and misleading statements in Google's promotional offer were essentially intended to result in the sale of the Google Tags service to Plaintiffs for a 30-day period or longer.

54.     As a result of Google's unfair and deceptive conduct described herein and its violation of Cal.Civ.Code § 1770, Plaintiffs have suffered damages.

55.     Plaintiffs, on their own behalf and on behalf of other members of this Class, seek judgment in their favor and against Google, and awarding them and other members of the Class injunctive relief and the maximum statutory damages available under Cal.Civ.Code § 1780.

### THE CREDIT CARD CLASS CLAIMS

### COUNT IV
**Breach of Implied Contract**
**(On Behalf of the Credit Card Class)**

56.     Plaintiffs adopt and incorporate by reference paragraphs 1-33 of this Complaint as if fully set forth herein.

57.     Those business owners who elected to participate in the 30-day trial of Google Tags were required by Google to enter their credit card number into Google's billing information fields.

58.     In providing this financial data to Google, Plaintiffs and other members of the Credit Card Class entered into an implied contract with Google.  Pursuant to this implied contract, Google became obligated to safeguard this data through all reasonable measures.  This includes complying with industry standards.

59.     The industry standard applicable to the credit-card transaction described above is set forth in Requirement 3.1 of the Data Security Standard (DSS) promulgated by the Payment Card Industry Security Standards Council.  Specifically, that standard requires the merchants to implement the following security measures:

> Keep cardholder data storage to a minimum by implementing data retention and disposal policies, procedures and processes, as follows.
>
> Implement a data retention and disposal policy that includes:
> - Limiting data storage amount and retention time to that which is required for legal, regulatory, and business requirements
> - Processes for secure deletion of data when no longer needed
> - Specific retention requirements for cardholder data

- A quarterly automatic or manual process for identifying and securely deleting stored cardholder data that exceeds defined retention requirements

PCI Security Standards Council LLC, *Navigating PCI DDS: Understanding the Intent of the Requirements, v2.0* (October 2010), p. 20.

60.   Google breached its implied contract with the merchants by taking none of the above measures dictated by the industry standard.   Instead, Google retained the credit-card information of the merchants long after they cancelled their subscription to Google Tags.   In addition, Google has continued to retain this credit-card information despite the fact that Google has discontinued the Google Tags advertising product itself.   Google's billing department has refused to delete this information from its records.

61.   Adding insult to injury, Google has not only retained the credit card information, but also has steadfastly refused to delete this information from its electronic billing records, despite numerous pleas from Plaintiffs to do so.   When confronted with a request to delete this information, Google has informed these merchants that it cannot do so unless they provide new credit card information as a substitute for the information to be deleted.

62.   Google has also breached its implied contract with the merchants by failing to notify them that it would be retaining their credit card information within its billing records.

63.   As a result of the foregoing, Plaintiffs and the Credit Card Class have suffered damages and will in the future suffer damages caused by the misconduct of the Defendant. Plaintiffs and the Credit Card Class are entitled to damages in an amount to be determined at trial, in addition to the cost for three years of credit monitoring and identity theft protection services.

**COUNT V**
**Violation of the California Customer Records Act,**
**Cal.Civ.Code § 1798.80, *et seq.***
**(On Behalf of the Credit Card Class)**

64.   Plaintiffs adopt and incorporate by reference paragraphs 1-33 of this Complaint as if fully set forth herein.

65.    The California Customer Records Act ("CCRA") provides, in pertinent part, that

> A business shall take all reasonable steps to dispose, or arrange for the disposal, of customer records within its custody or control containing personal information when the records are no longer to be retained by the business by (a) shredding, (b) erasing, or (c) otherwise modifying the personal information in those records to make it unreadable or undecipherable through any means.

Cal.Civ.Code § 1798.81.

66.    Under the CCRA, "personal information" is defined as

> any information that identifies, relates to, describes, or is capable of being associated with, a particular individual, including, but not limited to, his or her name, signature, social security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, *credit card number*, debit card number, or any other financial information, medical information, or health insurance information[.]

Cal.Civ.Code § 1798.80 (emphasis added).

67.    The members of the Credit Card Class canceled their "free" trial of Google Tags prior to, or upon, the expiration of the 30-day promotional period, and Google subsequently retired its Google Tags feature altogether. Thus, Google no longer needs to retain the credit-card number of the Class members. Nonetheless, Google has continued to retain this personal information in its electronic billing records.

68.    Worse yet, Google has stated to Plaintiffs and the Credit Card Class that Google will not delete their credit-card information without first requiring that the members either cancel their credit card altogether or replace the existing credit-card number with the number of a new credit card.

69.    On information and belief, Google has not taken a single step toward shredding, erasing, encrypting, or otherwise modifying the Plaintiffs' personal information so as to make it unreadable or undecipherable by others.

1      70.     As a result of Google's conduct described herein and its violations of

2 Cal.Civ.Code § 1798.81, Plaintiffs and the other Class members have suffered injuries, including

3 ongoing exposure to the risk of all manner of fraud as well as identity theft and devastating

4 financial loss.

5      71.     Plaintiffs, on their own behalf and on behalf of other members of this Class, seek

6 judgment in their favor and against Google, and awarding them and other members of the Class

7 injunctive relief and the maximum statutory damages available under Cal.Civ.Code § 1798.84.

8 **VII.     JURY DEMAND**

9       Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all

10 claims in this Complaint so triable.

11 **VIII.     REQUEST FOR RELIEF**

12       WHEREFORE, the Plaintiffs, on their own behalf and on behalf of the Classes, request

13 judgment as follows:

14

15 (a) Certification of the proposed Classes pursuant to Federal Rules of Civil Procedure Rule 23(a), (b)(2) and (b)(3);

16 (b) Designation of Plaintiffs as representatives of the proposed Classes and designation of Plaintiffs' counsel as Class counsel;

17

18 (c) An award of compensatory damages, the amount of which is to be determined at trial;

19 (d) An award of statutory damages and punitive damages, as provided by the statutes cited herein;

20

21 (e) An award to the Plaintiffs and the Classes of prejudgment interest, costs and attorneys' fees; and

22

23 (f) An award to the Plaintiffs and Classes of such other and further relief as the Court deems just and proper.

24

25

26

27

28

CLASS ACTION COMPLAINT

Dated: January 5, 2012

Respectfully submitted,

RACHEL FREZZA and MAURO RODRIGUEZ,
on their own behalf and on behalf of all others
similarly situated

By: _____
      One of the Attorneys for Plaintiffs and the
      Proposed Putative Classes

Todd C. Atkins
*tatkins@atkinsdavidson.com*
ATKINS & DAVIDSON, APC
701 B Street, Suite 1170
San Diego, CA 92101
619. 255.2380
Fax: 619.231.4984

Joseph J. Siprut*
*jsiprut@siprut.com*
James M. McClintick*
*jmcclintick@siprut.com*
SIPRUT PC
122 South Michigan Ave.
Suite 1850
Chicago, Illinois 60603
312.588.1440
Fax: 312.427.1850

*Pro hac vice admittance to be sought

Counsel for Plaintiff and the Putative Class

4849-3766-4782, v. 1

CLASS ACTION COMPLAINT

-16-