1  MAYER BROWN LLP
   Edward D. Johnson (SBN 189475)
2  wjohnson@mayerbrown.com
   John M. Neukom (SBN 275887)
3  jneukom@mayerbrown.com
   Two Palo Alto Square, Suite 300
4  3000 El Camino Real
   Palo Alto, CA  94306-2112
5  Telephone:  (650) 331-2000
   Facsimile:  (650) 331-2060
6

7  Attorneys for Defendant Google Inc.

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                   SAN JOSE DIVISION

12  RACHEL FREZZA and MAURO            CASE NO.  5:12-CV-00237-HRL
    RODRIGUEZ, on their own behalf and all
13  others similarly situated,          **MOTION TO DISMISS**

14                 Plaintiffs,         **Hearing Date: May 1, 2012**
                                       **Time: 10:00 a.m.**
15  v.                                 **Before: Honorable Howard R. Lloyd**

16  GOOGLE INC.,                       Complaint filed: January 13, 2012

17                 Defendant.

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS ...................................................................................................2

ARGUMENT ....................................................................................................................3

I.      Plaintiffs' Breach of Contract Claim Is Contradicted By The Terms Of Their Contract With Google. ....................................................................................................4

II.     Plaintiffs' Claim For Unjust Enrichment Is Not Recognized In This State.........................6

III.    Plaintiffs' CLRA Claim Is Misplaced Because The Statute Does Not Protect Businesses Buying Intangible, Internet Advertising Features. ...........................................7

IV.    Plaintiffs' Claim For Breach Of Implied Contract Fails Because Google Did Not Implicitly Undertake To "Delete" Credit Card Information From Billing Records............9

V.     Plaintiffs' Claim For Violation Of The CCRA Relies On A Fundamental Misreading Of The Statute's Plain Language. ...................................................................10

VI.    Amendment Would Be Futile Here. ....................................................................................11

CONCLUSION...................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Anthony v. Yahoo, Inc.*, 421 F. Supp. 2d 1257 (N.D. Cal. 2006)......................................4

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ......................................................................4

*Baltasar v. Apple, Inc.*, No. 10-CV-0321-WHA,
 2011 WL 6747884 (N.D. Cal. Dec. 22, 2011) .........................................................5

*BancFirst v. Dixie Restaurants, Inc.*, No. CIV-11-174-L,
 2012 WL 12879 (W.D. Okla. Jan. 4, 2012).........................................................10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................4

*Berry v. American Exp. Publishing, Inc.*, 147 Cal. App. 4th 224 (2007) ........................8

*California Medical Ass'n v. Aetna U.S. Healthcare of California, Inc.*,
 94 Cal. App. 4th 151 (2001) .................................................................................7

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) .....................................4

*District 1199P Health & Welfare Plan v. Janssen, L.P.*,
 784 F. Supp. 2d 508 (D.N.J. 2011) .......................................................................7

*Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010) .........................................11

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010)........................................6, 7

*Fairbanks v. Superior Court*, 46 Cal. 4th 56 (2009)...................................................7, 8

*Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK,
 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010).........................................................7

*Frankel v. Bd. Of Dental Exam'rs*, 46 Cal. App. 4th 534 (1996) ..................................9

*In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705 (N.D. Cal. 2011)...........................8

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ...........................................8

*Kilaita v. Wels Fargo Home Mortg.*, No. 11-CV-00079-EJD,
 2011 WL 6153148 (N.D. Cal. Dec. 12, 2011) ......................................................4

*Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342 (Jan. 25, 2012) ........................6

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005)...........................................................5

*Lauriedale Associates, Ltd. v. Wilson*, 7 Cal. App. 4th 1439 (1992)..............................6

*Lonely Maiden Prods., LLC v. GoldenTree Asset Management, LP*,
 201 Cal. App. 4th 368 (2011) ...........................................................................9, 10

**TABLE OF AUTHORITIES - Continued**

**Cases**                                                                                    **Page(s)**

*Melchior v. New Line Prods, Inc.*, 106 Cal. App. 4th 779 (2003)................................................6

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008).....................................3

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998) ......................................................................5

*Superior Dispatch, Inc. v. Insurance Corp. of New York*, 176 Cal. App. 4th 12 (2009)................4

*Wofford v. Apple, Inc.*, No. 11-CV-0034-AJB,
        2011 WL 5445054 (N.D. Cal. Nov. 9, 2011) ......................................................................7

*Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215 (N.D. Cal. 2011)....................................................4

**Statutes and Rules**                                                                       **Page(s)**

Cal. Civ. Code § 1761(a). ................................................................................................................7

Cal. Civ. Code § 1761(b). ................................................................................................................8

Cal. Civ. Code § 1761(d). ................................................................................................................8

Cal. Civ. Code § 1770 *et seq*..........................................................................................................7

Cal. Civ. Code § 1798.81.................................................................................................................11

1      **NOTICE OF MOTION AND MOTION**

2      TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE that on May 1, 2012, at 10:00 a.m., before the Honorable

4  Howard R. Lloyd, Defendant Google Inc. will and hereby does move to dismiss Plaintiffs'

5  Complaint (Dkt. 1).  Google's motion is based on this notice, the accompanying memorandum of

6  points and authorities, the Declaration of John M. Neukom, arguments of counsel, and any other

7  matters that the Court deems appropriate.

8      **STATEMENT OF ISSUE TO BE DECIDED**

9          Whether the Complaint fails to state any claim upon which relief can be granted.

10      **MEMORANDUM OF POINTS AND AUTHORITIES**

11         Plaintiffs signed up for "Google Tags," a feature that Google offered to businesses

12  seeking to advertise on the Internet.  A business using a Google Tag would have a yellow tag

13  placed next to its search or Maps result and could use the Tag to highlight a feature of its

14  business, like a photo or coupon.  Although the Tag would not change the business's ranking in

15  Google's search results, the Tag could provide a way for a business to distinguish itself from

16  other listings in Google's search results and in Google Maps.  Google first launched the Tags

17  product in limited markets in February 2010, expanding nationwide in June 2010.  Google

18  stopped offering the Tags product in April 2011.  During the entire time Tags were available,

19  they cost $25 per month for a single listing.

20         Plaintiffs' Complaint relates to a promotion that Google began running for Tags in July

21  2010.  Plaintiffs allege that (i) as part of this promotion, they were promised free, unlimited use

22  of Google Tags for a 30-day period, yet later were charged for usage exceeding $25; and (ii)

23  Google refused to delete their credit card numbers from its files even after they cancelled their

24  Tags.   Plaintiffs claim that they were deceived about the promotion, and that Google had

25  contractual and statutory duties to delete their credit card information after they no longer were

26  customers.

27         The core allegations, however, are flatly contradicted by the short, plain "terms and

28  conditions" (Terms) that governed the Google Tags promotion.  Plaintiffs agreed to these Terms

-1-

as a condition of their participation in the promotional offer.  And—while the Complaint repeatedly alludes to the Terms—Plaintiffs choose not to quote them or to attach them to their Complaint.

Plaintiffs plead five claims: breach of contract; unjust enrichment; violation of California's Consumer Legal Remedies Act (CLRA); breach of implied contract; and breach of the California Consumer Records Act (CCRA).  Each of these claims is fatally flawed.

**Breach of Contract**: Although Plaintiffs try to ignore the Terms of their agreements with Google, the Complaint incorporates the Terms by reference.  Those Terms show that Google did exactly what it promised.  Google never promised Plaintiffs "free" or "unlimited" use of Google Tags, but offered a $25 credit.  As the Terms stated, that $25 credit would be applied to whatever amount a business owed for Tags.  So, if a business had a single listing, the first month would effectively be free.  If a business had multiple listings, that $25 credit would be applied to all charges the business incurred through the use of multiple Tags.

**Unjust enrichment**: Unjust enrichment is not a valid cause of action under California law.

**Consumer Legal Remedies Act**: Plaintiffs are not "consumers" for purposes of the CLRA, and therefore have no standing to assert a CLRA claim, much less for intangible advertising services that also are beyond the CLRA's scope.

**Breach of implied contract**: Google never promised, implicitly or otherwise, that it would delete plaintiffs' credit card numbers upon request.  Nor did Google implicitly agree to comply with the Payment Card Industry's Data Security Standards in handling Plaintiffs' credit card data.

**California Customer Records Act**: The CCRA does not require disposal of credit card numbers upon request.  The statute contains only a conditional requirement that, *if* a company chooses to dispose of personal information such as credit card numbers, it must then do so carefully.  Plaintiffs do not allege that Google disposed of their credit card numbers, and Google therefore cannot have violated the CCRA.

### STATEMENT OF FACTS

Plaintiffs allege that the Google Tags Internet advertising feature was not directed at consumer or personal use, but rather could be used exclusively for business purposes: "Google Tags was an online feature that was designed to enhance the appeal of a *business* and more effectively *promote the services of that business* on the Web."  Compl. ¶ 1 (emphasis added); *see also id.* ¶ 11 ("The basic idea behind [Google Tags] was to provide a way for a *business* that

advertised its products … to showcase … distinguishing features."). If a business used Google Tags, its name and other information—such as special promotions, photographs, or a link to its web site—would be displayed prominently on the Internet. *Id.* ¶ 12.

Plaintiffs also allege that, for a limited time starting in July 2010, Google offered businesses a special pricing promotion for Tags. *Id.* ¶ 14. Plaintiffs repeatedly allege that Google provided written "terms" for the promotional offer (and therefore incorporate the promotional offer's written terms by reference into the Complaint). But the Complaint does not quote or attach the incorporated terms, which include this statement:

> Promotional credit allows for $25.00 of free Google Tags advertising (equal to 30 days free for one listing). This credit can be spent on one tag listing, or it can be applied across multiple tags listings and $25.00 will be deducted from your monthly billing statement. Advertisers will be charged for advertising that exceeds the promotional credit, which is $25.00, per listing, per month . . . .

*See* Declaration of John M. Neukom, Exhs. 1-4.

The written terms made perfectly clear that the promotional offer was not for unlimited use of Google Tags. Rather, it was a *credit* of $25. That credit would cover *all* charges for the use of a *single* Google Tag (not many) for *30 days*, or could be applied as a $25 deduction to the total charges owed if a business opted to use multiple Tags or continued to use Tags for more than a month.

Plaintiffs then allege that Google "charged them for their use of multiple tags," so that "the trial offer consisted merely of a one-time, $25 discount" (Compl. ¶ 16), exactly as the promotion's written Terms had explained.

Plaintiffs also allege that Google required them to provide a credit card number when signing up for Google Tags, and yet later refused Plaintiffs' request to destroy or delete that information from its "electronic billing records." *Id.* ¶¶ 17-18.

### ARGUMENT

The Complaint should be dismissed if it "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Each of Plaintiffs' claims fails on either or both of these grounds. The Court must "accept" the allegations "as true" and afford Plaintiffs the benefit of "reasonable

-3-

inference[s]," but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Because "contract interpretation is a matter of law and solely a judicial function," the Court should not defer to Plaintiffs' allegations about what a contract says or means. *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1219 (N.D. Cal. 2011) (citing *Superior Dispatch, Inc. v. Insurance Corp. of New York*, 176 Cal. App. 4th 12, 31 (2009)). Thus, "[c]ourts may dismiss breach of contract claims when the agreement is not reasonably susceptible to any meaning that could support the plaintiff's legal theories." *Anthony v. Yahoo, Inc.*, 421 F. Supp. 2d 1257, 1260 (N.D. Cal. 2006). The Court also need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Because Plaintiffs have not alleged a "plausible claim for relief" under any theory, the Complaint should be dismissed. *Iqbal*, 129 S. Ct. at 1950.

## I.     Plaintiffs' Breach of Contract Claim Is Contradicted By the Terms of Their Contract with Google

Plaintiffs allege that Google breached a written contract by "charging these merchants for use of Google Tags during the 30-day trial period." Compl. ¶ 41. This claim is meritless for two independent reasons.

*First*, although Plaintiffs allege the existence of a written contract, they fail to put that contract before this Court. Plaintiffs fail to allege excerpts of or quotations from portions of the contract. Plaintiffs do not even purport to include a comprehensive representation (if not quotation) of the contract's terms. The Complaint is, therefore, the rare pleading that asserts a written contract (in cursory fashion) without pleading its contents.

Plaintiffs' first claim should be dismissed on that basis alone. "[A] plaintiff must allege the existence of an enforceable contract or contract term that a defendant purportedly breached. In order to properly plead the existence of such a term, a plaintiff must either set forth in haec verba *all* the terms of the contract or state the legal effect of those terms." *Kilaita v. Wells Fargo Home Mortg.*, No. 11-CV-00079-EJD, 2011 WL 6153148, at *4 (N.D. Cal. Dec. 12, 2011)

-4-

(emphasis added).  If a plaintiff chooses "to plead a contract by its legal effect," the plaintiff still "must allege the substance of its relevant terms.  This . . . requires a careful analysis of the instrument, *comprehensiveness in statement*, and avoidance of legal conclusions." *Baltasar v. Apple, Inc.*, No. 10-CV-03231-WHA, 2011 WL 6747884, at *2 (N.D. Cal. Dec. 22, 2011) (emphasis added).  The Complaint falls far short of these standards.

*Second*, the written contract confirms that Google did not breach the contract, but gave Plaintiffs a $25 promotional *credit* exactly as promised.  This Court may consider the actual terms of the written contract at the pleadings stage because the Complaint includes numerous references to it, and makes a handful of (misleading) representations about its substance.  Compl. ¶¶ 3 ("terms of the trial offer"); 14 ("terms of this initial offering"); 15 ("simple and straight forward language of this promotion"); 37 ("contractual agreement").  "[T]he 'incorporation by reference' doctrine . . . permits [the Court] to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation and quotation omitted).  The Ninth Circuit has instructed district courts to apply this doctrine to preclude "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998).

That written contract includes a single "Terms and Conditions" paragraph that is not long or confusing.  That one paragraph reads in its entirety:

> Promotional credit is only valid when signing up for new Google Tags listings on or after July 7, 2010 at 12am. *Promotional credit allows for $25.00 of free Google Tags advertising (equal to 30 days free for one listing)*.  This credit can be spent on one tag listing, or it can be applied across multiple tags listings and $25.00 will be deducted from your monthly billing statement. *Advertisers will be charged for advertising that exceeds the promotional credit, which is $25.00, per listing, per month*.  If you don't want to be charged for the additional months, you can pause your tags at any time and your charges will be pro-rated for that month.  Google Tags are subject to ad approval, valid registration and acceptance of the Google Places and Google Tags Program terms and conditions.  The promotional credit is non-transferable and may not be sold or bartered.  Offer may be revoked at any time for any reason by Google Inc.  One promotional credit per customer.

Neukom Dec., Exhs. 1-4 (emphasis added).

Those plain Terms defeat Plaintiffs' contract claim. Plaintiffs cannot in good faith continue to allege that Google duped businesses into believing they could use an *unlimited* number of Google Tags for free. Google offered and in fact provided a $25 credit, which would cover all charges for "*30 days* for *one* [Google Tag] *listing*." *Id.* The named Plaintiffs admit that they signed up for *multiple* Google Tags, and specifically complain "that Google had charged them for *their use of multiple tags*." Compl. ¶ 16 (emphasis added). Plaintiffs were therefore charged for their use of those advertising services, albeit with the benefit of a $25 deduction, that they allege they received.

## II. Plaintiffs' Claim for Unjust Enrichment Is Not Recognized in This State

Plaintiffs assert a claim of "unjust enrichment" by alleging that Google has improperly charged them for use of the Google Tags advertising service. This claim should be dismissed, *first*, because "there is no cause of action in California for unjust enrichment." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) (citations and quotation omitted); *see also Melchior v. New Line Prods, Inc.*, 106 Cal. App. 4th 779, 793 (2003); *Lauriedale Associates, Ltd. v. Wilson*, 7 Cal. App. 4th 1439, 1448 (1992).

*Second*, even if the Court viewed Plaintiffs' unjust enrichment claim as a quasi-contractual claim for restitution, it should be dismissed because the Complaint fails to include necessary supporting allegations. California's restitution claim requires an express but *unenforceable or ineffective* contract. *Durell*, 183 Cal. App. 4th at 1370. Plaintiffs have not alleged any unenforceable or ineffective contract. To the contrary, they allege that "[t]he contract between Plaintiffs and Google is a valid and enforceable contract." Compl. ¶ 38. Plaintiffs therefore are precluded from elsewhere alleging unjust enrichment or pursuing a restitution claim. "Although a plaintiff may plead inconsistent claims that allege both the existence of an enforceable agreement and the absence of an enforceable agreement," Plaintiffs' "unjust enrichment claim did not deny the existence or enforceability of that agreement." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389 (2012). Under California law, "Plaintiffs are therefore precluded from asserting a quasi-contract claim under the theory of unjust

-6-

1    enrichment." *Id.* at 1389-90 (citing *California Medical Ass'n v. Aetna U.S. Healthcare of*
2    *California, Inc.*, 94 Cal. App. 4th 151, 173-74 (2001); *Durell*, 183 Cal. App. 4th at 1370).

3         *Third*, even if this Court were to entertain a common law claim for unjust enrichment
4    under some other source of law, Plaintiffs have not alleged unjust enrichment.  The Complaint is
5    clear that Google collected charges for Google Tags usage over $25.  But the Complaint is
6    likewise clear that the named Plaintiffs incurred those charges through their own increased usage
7    of *multiple* Google Tags.  Compl. ¶¶ 13 (alleging that the charge was $25 per Tag); 16 (alleging
8    that the named Plaintiffs had "use[d] multiple tags during all or most of [the 30-day trial]
9    period").  Plaintiffs are therefore complaining only that they were charged for services they used
10   and benefited from.  That is not unjust enrichment, even in jurisdictions that recognize the claim.
11   *See, e.g.*, *District 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 533
12   (D.N.J. 2011) ("alleged overpayment is insufficient under an unjust enrichment claim" unless the
13   plaintiffs plead personal injury or that the product received was "inadequate or inferior").
14   Because, "as pled, Plaintiffs received the benefit of their bargain," their unjust enrichment claim
15   is facially deficient.  *Id.*

16   **II.    Plaintiffs' CLRA Claim Is Misplaced Because The Statute Does Not Protect**
17   **Businesses Buying Intangible, Internet Advertising Features**

18        Like Plaintiffs' other causes of action, their claim for breach of California's Consumer
19   Legal Remedies Act is barred for multiple reasons.  *First*, the CLRA does not cover Internet
20   advertising services or software, or any other commerce category that Google Tags would
21   arguably fit.  Instead, the CLRA bars deceptive practices in connection with the "sale or lease" of
22   "goods or services."  Cal. Civ. Code § 1770 *et seq.*  The CLRA defines "goods" to mean
23   "tangible chattels," Cal. Civ. Code § 1761(a), which does not describe an (intangible) Internet
24   advertising service, such as Google Tags.  Software is not a "good" under the CLRA.  *See*
25   *Wofford v. Apple, Inc.*, No. 11-CV-0034-AJB, 2011 WL 5445054, at *2 (N.D. Cal. Nov. 09,
26   2011); *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL 3910169, at *14 (N.D.
27   Cal. Oct. 5, 2010) (same).  Other intangible "products" such as life insurance, *see Fairbanks v.*
28   *Superior* Court, 46 Cal. 4th 56, 61 (2009), or the extension of credit, *Berry v. American Exp.*

-7-

1  *Publishing, Inc.*, 147 Cal.App.4th 224, 229 (2007), also do not qualify as CLRA "goods."

2  Google Tags also is not a "service" within the scope of the CLRA.  The CLRA defines

3  "services" to mean "work, labor, and services for *other than* a commercial or business use."  Cal.

4  Civ. Code § 1761(b) (emphasis added).  Google Tags are an advertising service—the most

5  "commercial" use imaginable.  In addition, in holding that life insurance is not a "service" under

6  the CLRA, *Fairbanks*, 46 Cal. 4th at 61, the California Supreme Court limited the statutory

7  scope to services that amount to "work or labor," *id.*, which the Court recognized is a "restrictive

8  definition."  *Id.* at 64.  Whatever "service" a Google Tag might provide certainly does not

9  constitute "work or labor."

10  *Second*, Plaintiffs lack standing to pursue any claim under the CLRA because they are

11  not consumers.  A "consumer" under the CLRA must engage in a transaction for "personal,

12  family, or household purposes," Cal. Civ. Code § 1761(d).  Although the Complaint tries to

13  characterize the named plaintiffs as "consumers" (Compl. ¶ 44), the Complaint repeatedly

14  acknowledges that both opened Google Tags accounts solely for business purposes.  Plaintiff

15  "Rodriguez signed up for . . . Google Tags in order to promote the services of his employer, an

16  auto dealership." *Id.* ¶ 19.  Likewise, Plaintiff "Frezza had hoped to use the Google Tags service

17  to better advertise her small holistic healing business[.]"  *Id.* ¶ 22.  Because the Complaint admits

18  that both named plaintiffs used Google Tags for business purposes rather than for "personal,

19  family, or household" use (Cal. Civ. Code § 1761(d)), they are not "consumers" who may bring a

20  claim under the CLRA.  *See In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal.

21  2011) ("[a] violation of the CLRA may only be alleged by a consumer") (citation omitted).

22  *Third*, Plaintiffs have failed to allege any deceptive statement by Google.  Plaintiffs

23  allege in cursory fashion that Google lured them into Google Tags with false promises of

24  unlimited, free Tags usage.  But Plaintiffs fail to identify (let alone quote) any particular

25  statement by Google to that effect, and certainly without the particularity required by the

26  "heightened pleading standards" under Rule 9(b), which "apply to claims for violations of the

27  CLRA" in federal court. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  The

28  closest Plaintiffs come to identifying any particular statement would lead the Court to the "terms

-8-

and conditions" for Google Tags, which confirm that Google did not deceive Plaintiffs.  Neukom Dec., Exhs. 1-4.

## IV.   Plaintiffs' Claim for Breach of Implied Contract Fails Because Google Did Not Implicitly Undertake to "Delete" Credit Card Information From Billing Records

Plaintiffs allege that they provided their credit card information to Google only pursuant to an implied agreement that Google would adhere to "industry standards" in handling that information.  Compl. ¶ 58. And Plaintiffs allege that this silent agreement somehow included a promise by Google to maintain *perfect* adherence to every single provision of the "Data Security Standards" ("DSS").  The DSS are suggestions for merchants promulgated by an industry group of credit card companies called the "Payment Card Industry Security Standards Council."  *Id.* at ¶ 59.  Plaintiffs then allege that Google breached the implied agreement by failing to delete or destroy credit card information upon card-holder request as the DSS recommend.

This claim is also inadequately pleaded.  *First*, there is no pleaded basis for an implied agreement.  Under California law, "implied covenants are not favored . . . and courts will declare the same to exist only when there is a satisfactory basis in the express contract of the parties which makes it *necessary* to imply certain duties and obligations in order to effect the purposes of the parties to the contract made."  *Frankel v. Bd. Of Dental Exam'rs*, 46 Cal. App. 4th 534, 545 (1996) (emphasis added).  Plaintiffs have alleged (and there is) no legal or practical "necessity" here, for example that accepting credit card information requires perfect adherence to an exhaustive list of third-party recommendations about how to maintain that information.  And it is not the case that perfect adherence to DSS standards is "necessary" for online commerce even to occur.  If it were necessary, there would be no reason for the "Payment Card Industry Security Standards Council" to make the recommendations.

If an implied contract term is not "indispensable to effectuating the parties' intentions," it must "arise[] from the contract's express language."  *Lonely Maiden Prods., LLC v. GoldenTree Asset Management, LP*, 201 Cal. App. 4th 368, 377 (2011).  But no "implication" of DSS recommendations arises from the "terms and conditions" for Google Tags, (Neukom Dec., Exhs. 1-4), which do not mention data retention or disposal, or from any contractual language

-9-

suggested by the Complaint.  And there is no allegation that "the implied term was so clearly within the parties' contemplation when they drafted the contract that they did not feel the need to express it," also a required element of this claim.  *Lonely Maiden*, 201 Cal. App. 4th at 377.

*Second*, even if Google and Plaintiffs had entered into some general, implied agreement that Google would not abuse or neglect Plaintiffs' credit card information, that agreement would not include the specific, detailed provisions of the DSS on which Plaintiffs base their claim. Courts have already rejected similar attempts to transform the DSS recommendations into legal obligations that may be foisted onto unsuspecting defendants.  *See e.g.*, *BancFirst v. Dixie Restaurants, Inc.*, No. CIV-11-174-L, 2012 WL 12879, at *2-4 (W.D. Okla. Jan. 4, 2012) (holding that the industry recommendations reflect at most "general obligations" and not specific obligations to individual plaintiffs).

## V. Plaintiffs' Claim for Violation of the CCRA Relies on a Fundamental Misreading of the Statute's Plain Language

Plaintiffs allege that Google has violated the California Customer Records Act ("CCRA") by refusing to dispose of their credit card numbers upon request.  Compl. ¶¶ 67 ("Google has continued to retain this personal [credit card] information in its electronic billing records."); 68 ("Google will not delete their credit card information[.]"); 69 ("Google has not taken a single step toward shredding, erasing, encrypting, or otherwise modifying the Plaintiffs' personal [credit card] information[.]").

But the CCRA does not affirmatively require companies to dispose of customer credit card information at all, much less at any particular time or under any particular circumstances. And there is certainly no provision (or even suggestion) that a company must dispose of credit card information upon customer request.  Instead, the CCRA requires that *if* a company disposes of personal information such as credit card numbers—*whenever the company chooses to do so*—it must then proceed to do so with care.  In this way, the Act is designed to ensure that companies do not discard credit card information in ways that would later jeopardize card holders, for example by leaving sensitive financial information in publicly available places.

The relevant portion of the CCRA, quoted by Plaintiffs in Paragraph 65 of the Complaint, makes clear both that (i) the CCRA applies only if a company chooses to dispose of credit card information and (ii) the CCRA imposes no obligation as to whether or when any such disposal must occur:

> A business shall take all reasonable steps to dispose, or arrange for the disposal, of customer records within its custody or control containing personal information *when the records are no longer to be retained by the business* by (a) shredding, (b) erasing, or (c) otherwise modifying the personal information in those records to make it unreadable or undecipherable through any means.

Cal. Civ. Code § 1798.81 (emphasis added).

Consistent with this reading of the statute's plain language, Judge Armstrong has recently observed that the CCRA must be "triggered" before it applies. *Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1114 (N.D. Cal. 2010). The triggering event is a company's decision (whenever that should occur) that it "intends to discard records containing personal information." *Id.* Without that trigger, the CCRA "plainly is inapplicable." *Id.*

Here, not only have Plaintiffs failed to allege that Google has triggered the CCRA by choosing to dispose of credit card information, they have furthermore affirmatively pleaded themselves out of the protections of this statute. They have done so by alleging that Google has refused to do the one act—disposing of their personal information—that is necessary to "trigger" the statute's protections. *See* Compl. ¶¶ 67-69. That claim, too, should be dismissed.

## VI.    Amendment Would Be Futile Here.

This is the unusual case where amendment is self-evidently futile. The Terms preclude Plaintiffs' express and implied contract claims. The unjust enrichment claim is not capable of amendment, as California law does not recognize the claim and Plaintiffs got the benefit of their bargain. Google Tags are plainly not within the scope of the CLRA. And the CCRA has no application to the facts alleged here or anything like them. Leave to amend, therefore, should be denied and the case dismissed with prejudice.

1

**CONCLUSION**

2

The Complaint should be dismissed without leave to amend.

3

Dated:  March 16, 2012                          MAYER BROWN LLP

4

5

By:   /s/Edward D. Johnson

6

Edward D. Johnson

7

John M. Neukom

8

Attorneys for Defendant
Google Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28