E-filed on: 11/20/12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RACHEL FREZZA and MAURO RODRIGUEZ, on their own behalf and all others similarly situated,<br><br>              Plaintiffs,<br>   v.<br><br>GOOGLE INC.,<br><br>              Defendant. | Case No.: 12-CV-00237-RMW<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>**[Re Docket No. 7]** |

Plaintiffs Rachel Frezza and Mauro Rodriguez filed the instant class action alleging claims related to a promotion that defendant Google Inc. ("Google") began running for Google Tags ("Tags") in July 2010. Google moves to dismiss for failure to state a claim. The court has heard the arguments of the parties and considered the papers submitted. For the reasons set forth below, the court grants Google's motion to dismiss with thirty days leave to amend the breach of contract and breach of implied contract claims.

## I.   BACKGROUND

In February 2010, Google introduced a service called Tags to merchants throughout the United States. Compl. ¶ 11. Tags was an online feature, designed to enhance the appeal of a business and more effectively promote the services of that business on the Web. *Id*. ¶ 1. The basic purpose of Tags was to provide merchants who advertised on the internet with a way to showcase

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND - Case No.: 12-CV-00237-RMW
CVH/LJP                                                    1

distinctive aspects of their business. *Id*. ¶ 11. The business listing was made to stand out from others through the use of a bright yellow "tag" icon that appeared next to the listing in Google's search results. *Id*. ¶ 12. Accompanying this tag was additional information about the business, such as promotions, photos, videos, menus, or a link to the business's website. *Id*. The fee for use of the tag was $25 per month for each business listing. *Id*. ¶ 13.

In order to introduce Tags to a wider pool of merchants, Google launched a "trial" period in July of 2010. *Id*. ¶ 14. Plaintiffs allege that, under the terms of the initial offering, consumers were led to believe that the "trial" period allowed free usage of Google Tags for a 30-day period. *Id*. Nevertheless, Google required new users to enter their credit card information in order to sign up. *Id*.

On November 18, 2010, Mr. Rodriguez signed up for Tags in order to promote the services of his employer, an auto dealership. *Id*. ¶ 19. Mr. Rodriguez alleges "he was told he would not be charged during the initial 30-day period." *Id*. Less than thirty days after signing up he cancelled his trial subscription of Tags, but soon thereafter had a $52.00 charge on his credit card from Google. *Id*. ¶¶ 20-21. Ms. Frezza signed up for Tags in the fall of 2010 after reading Google's promotional offer for a "free" trial. *Id*. ¶ 22. Ms. Frezza intended to use Tags to "better advertise her small holistic healing business, and assumed that she had nothing to lose by signing up for the supposedly free trial." *Id*. Like Mr. Rodriguez, Ms. Frezza found that Google had made charges to her credit card. *Id*. ¶ 23. As a result, plaintiffs contacted Google's customer service department and were told that "the trial offer consisted merely of a one-time, $25 discount – as opposed to genuinely 'free' use of the tags during the 30-day period." *Id*. Plaintiffs allege this was not disclosed in the terms of Google's promotional offer. *Id*. ¶ 16.

The complaint does not attach nor quote the exact terms of the offer plaintiffs allegedly saw. However, filed with Google's motion to dismiss is a declaration from Google's counsel attaching four versions of what counsel claims are the "Terms and Conditions" for the Google Tags promotional offer referred to by plaintiffs. Dkt. No. 7-1 & Exs. 1-4. The declaration fails to show that Google's counsel has the requisite knowledge to permit him to authenticate the four versions of the promotional offer.

Google continues to retain the credit card information of those who signed up for the "free trial" period despite discontinuing Tags on April 29, 2011. *Id*. ¶ 17. Plaintiffs contend that Google refuses to provide them with a way of deleting their credit card information from Google's electronic billing records. *Id*. ¶ 18. Plaintiffs believe this exposes them to an "elevated and very real risk of fraud, identity theft, and catastrophic financial loss." *Id*.

Plaintiffs' complaint asserts causes of action for: (1) Breach of Contract, (2) Unjust Enrichment, (3) Violation of the California Consumers Legal Remedies Act ("CLRA"), (4) Breach of Implied Contract, and (5) Violation of the California Customer Records Act ("CCRA"). Plaintiffs bring counts (1), (3), and (5) on behalf of a class defined as: "all consumers nationwide who signed up for a free 30-day trial of Google Tags and who were nevertheless charged for their use of the tags during this period ('the Contract Class')." *Id*. ¶ 26. Plaintiffs bring counts (2), (3), and (4) on behalf of a second class defined as: "all consumers nationwide who signed up for a free 30-day trial of Google Tags and whose credit card information was retained by Google after their accounts were closed ('the Credit Card Class')." *Id*. ¶ 27.

## II.     DISCUSSION

**1.     Breach of Contract**

Plaintiffs allege that by submitting their credit card information as required by the terms of the Google Tags promotion, plaintiffs entered into a contractual agreement with Google. Google first argues that plaintiffs have not alleged the specific contents or terms of the asserted contract, relying on *Kilaita v. Wells Fargo Home Mortgage*, No. 11-CV-00079, 2011 WL 6153148, at *4 (N.D. Cal. Dec. 12, 2011) ("For a breach of contract claim to succeed, a plaintiff must allege the existence of an enforceable contract or contract term that a defendant purportedly breached. In order to properly plead the existence of such a term, a plaintiff must either 'set forth in *haec verba*' all the terms of the contract or state the legal effect of those terms." (citation omitted)). In *Kilaita*, the plaintiff claimed that a foreclosure commenced by a party other than the holder of the note was a material breach of the contract between the parties, but the plaintiff failed to identify any specific term nor set out the terms of the deed of trust. *Id.* at *4. Here, plaintiffs have alleged that "[u]nder the terms of th[e] initial offering, consumers *were led to believe* that they could append a Google

Tag to one or more of their listing—absolutely free of charge—for a 30-day period." Compl. ¶ 14 (emphasis added). They go on to allege that "Google has breached the contract by charging these merchants for use of Google Tags during the 30-day trial period, despite an explicit promise in the original offer that it would not do so." Compl. ¶ 41.

Google's contention that plaintiffs' pleading is insufficient to assert a breach of contract claim has merit. The complaint merely alleges that plaintiffs subjectively believed that use of any Google Tags for which they signed up during the promotional period were free for the first thirty days no matter the number of Tags for which they signed up. To successfully assert a breach of contract claim, plaintiffs must quote the operative language of the purported contract or at least the substance of what they were told that was reasonably susceptible to the interpretation they assert. Contracts must be objectively construed and are not to be interpreted based upon the subjective belief or understanding of a party. *See, e.g.*, *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1126 (2008).

Google argues that the court can consider the "Terms and Conditions" submitted with its motion and find that Google made clear that the offer from Google was only for a $25.00 credit, covering thirty days free for one Tag. However, the submitted "Terms and Conditions" are supported only by the testimony of Google's counsel, but his declaration does not show facts supporting personal knowledge that the "Terms and Conditions" were actually those utilized by Google or presented to plaintiffs.

Plaintiffs are given thirty days leave to amend their breach of contract claim to quote the pertinent language of the contract they assert or at least the substance of what they were told which was reasonably susceptible of the interpretation that the first thirty days of any Tag for which they signed up in the promotion period was free. Since plaintiffs claim they entered into contracts with Google, they should be able to set forth the essential terms of those contracts.

**2.     Unjust Enrichment**

Google argues, *inter alia*, that plaintiffs have not properly alleged a claim for unjust enrichment because they were simply charged for services they used and from which they benefited. "The doctrine [of unjust enrichment] applies where plaintiffs, while having no

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND - Case No.: 12-CV-00237-RMW
CVH/LJP                                                  4

enforceable contract, nonetheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value." *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009). Here, plaintiffs' claim for unjust enrichment is based on the allegation that Google received a benefit by improperly collecting fees for use of Tags when Google represented that the trial period was free. Although the claim is pleaded in the alternative, plaintiff's theory still relies on Google being contractually bound not to charge plaintiffs for Tags for the first thirty days. Thus, plaintiffs' unjust enrichment claim is simply a reformulation of their breach of contract claim and is dismissed as duplicative.

### 3. CLRA Claim

Plaintiffs bring a claim under California's Consumer Legal Remedies Act ("CLRA"). A plaintiff may bring a claim under the CLRA when "any person" uses a statutorily prohibited trade practice "in a transaction . . . which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770. The CLRA defines "goods" as "tangible chattels." *Id.* at § 1761(a). The CLRA defines "services" as "work, labor, and services for other than a commercial or business use." *Id.* at § 1761(b). Finally, "[c]onsumer means an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." *Id.* at § 1761(d).

The court first looks to whether plaintiffs even qualify as consumers for protection under the CLRA. A violation of the CLRA may only be alleged by a consumer. *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1303 (S.D. Cal. 2003). Both Mr. Rodriguez and Ms. Frezza acknowledged that they signed up for Google Tags accounts for business purposes. Mr. Rodriguez signed up for Google Tags "in order to promote the services of his employer, an auto dealership." Compl. ¶ 19. Likewise, Ms. Frezza "hoped to use the Google Tags service to better advertise her small holistic healing business." Compl. ¶ 22. Additionally, the complaint is replete with references to how Tags was a service designed for businesses and merchants. *E.g.*, *id.* ¶ 11-13.

Because the complaint makes clear that plaintiffs signed up for Tags for business purposes and not personal, family, or household purposes, they do not qualify as "consumers" protected

under the CLRA. Plaintiffs argue that the statute "is to be liberally construed." While this may be true, the statute is intended to protect consumers, not those who make purchases for business purposes. *See Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1222 (N.D. Cal. 2011). Accordingly, the court grants Google's motion to dismiss plaintiffs' CLRA claim. *See id.* (dismissing plaintiffs' CLRA claim where plaintiffs did not qualify as consumers for purposes of the statute because they had alleged they were "sellers" and had "sellers" business accounts). Because it does not appear that plaintiffs could amend to allege that they are, in fact, consumers, this claim is dismissed with prejudice.

As plaintiffs do not qualify as consumers, the court does not need to reach plaintiffs' argument that Tags qualified as a service or their allegation that Google acted deceptively and unfairly for purposes of the CLRA.

**4.    Breach of Implied Contract**

A contract implied in fact consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words. *Retired Emps. Assn. of Orange Cnty., Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1178 (Cal. 2011). Plaintiffs allege that a contractual relationship existed with Google once they entered their credit card information into Google's billing system. According to plaintiffs, the implied contract mandated that Google handle plaintiffs' credit card information responsibly.

Plaintiffs cite to authority holding that acceptance of non-cash methods of payment leads to the creation of some sort of contractual arrangement. *See Richardson v. DSW, Inc.*, No. C-05-4599, 2005 WL 2978755, at *2 (N.D. Ill. Nov. 3, 2005); *see also Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 159 (1st Cir. 2011). However, even if an implied contract does indeed exist, plaintiffs must sufficiently plead that Google agreed to and then breached a specific obligation.

Plaintiffs allege that Google breached the implied agreement by not adhering to the Data Security Standards ("DSS") promulgated by the Payment Card Industry Security Standards Council. Plaintiffs note that the DSS requires keepers of cardholder data to "implement a data retention and disposal policy that includes limiting data storage amount and retention time to that which is required for legal, regulatory, and business requirements." Compl. ¶ 59. However,

plaintiffs have not sufficiently alleged that Google and plaintiffs had an implied agreement that required Google to adhere to the provisions of the DSS. Plaintiffs cite to authority stating that taking reasonable measures to protect customer information in credit card transactions "*might* include meeting industry standards." *In re Hannaford Bros. Co. Customer Security Data Breach Litig.*, 613 F. Supp. 2d 108, 119 (D. Maine 2009) (emphasis added). However, plaintiffs do not allege or otherwise show why Google is bound by the DSS here. No facts are alleged to support an inference that Google even contemplated, much less agreed to meet the DSS standards. The most plaintiffs allege is that by providing their financial data to Google they entered "into an implied contract with Google." Compl. ¶ 58. This conclusory statement does not show that Google made any indication that it adopted the DSS recommendations in its dealings with plaintiffs. As such, plaintiffs have not alleged that Google was bound by the specific obligation it allegedly breached.

If, as plaintiffs argue in their opposition, Google simply agreed to "handle its customers' credit card information responsibly," Dkt. No. 13, the claim still fails. Plaintiffs contend that Google breached the implied contract because it has retained the credit card information of plaintiffs after they have cancelled their subscription to Google Tags. *See* Compl. ¶ 60. However, retaining information does not amount to handling it irresponsibly. Without more, plaintiffs have not sufficiently alleged that Google breached a general obligation to reasonably safeguard customer information. As such, the court grants Google's motion to dismiss plaintiffs' breach of implied contract claim with thirty days leave to amend.

**5.    CCRA Claim**

The California Customer Records Act states:

> A business shall take all reasonable steps to dispose, or arrange for the disposal, of customer records within its custody or control containing personal information when the records are no longer to be retained by the business….

Cal. Civil. Code § 1798.81.

Plaintiffs allege that Google violates this provision by retaining their credit card information. The cited section of the CCRA, however, applies only to situations where a business intends to discard records containing personal information. *Doe 1 v. AOL LLC*, 719 F. Supp. 2d

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND - Case No.: 12-CV-00237-RMW
CVH/LJP                                                  7

1102, 1114 (N.D. Cal. 2010). By its terms, the statute is triggered only "when the records are no longer to be maintained by the business . . . ." Cal. Civ. Code § 1798.81.

Here, plaintiffs have not alleged that Google intends to discard plaintiffs' credit card information. In fact, plaintiffs state "Google has not taken a single step toward shredding, erasing, encrypting, or otherwise modifying the Plaintiffs' personal information." Compl. ¶ 69. Therefore, the statute has not been triggered and plaintiffs' claim must fail. Because it does not appear that plaintiffs could allege facts making the statute applicable, this claim is dismissed with prejudice.

Plaintiffs argue that this interpretation is absurd because businesses would simply keep customer records forever to avoid triggering the statute. However, there are other statutory provisions imposing obligations with respect to data security, as well as practical considerations militating against perpetual retention of records. In addition, the legislative history suggests that section 1798.81 was intended to reduce identity theft by specifying certain secure methods of businesses to dispose of records containing personal information, *see* California Bill Analysis, A.B. 1094 Assem., 6/23/2009, not to specify a timeline under which businesses *must* dispose of records.

### III.   ORDER

For the foregoing reasons, the court grants Google's motion to dismiss. Plaintiffs' claims for Unjust Enrichment (Second Cause of Action), Violation of the CLRA (Third Cause of Action), and Violation of the CCRA (Fifth Cause of Action) are dismissed with prejudice. Plaintiffs' claim for Breach of Contract (First Cause of Action) and Breach of Implied Contract (Fourth Cause of Action) are dismissed with leave to amend. Any amended complaint must be filed within thirty days of the date of this order.

DATED: November 20, 2012

_Ronald M. Whyte_
RONALD M. WHYTE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND - Case No.: 12-CV-00237-RMW
CVH/LJP                                8