1  MAYER BROWN LLP
   Edward D. Johnson (SBN 189475)
2  wjohnson@mayerbrown.com
   Donald M. Falk (SBN 150256)
3  Jonathan A. Helfgott (SBN 278969)
   Two Palo Alto Square, Suite 300
4  3000 El Camino Real
   Palo Alto, CA  94306-2112
5  Telephone:  (650) 331-2000
   Facsimile:  (650) 331-2060
6

7  Attorneys for Defendant Google Inc.

8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11                    **SAN JOSE DIVISION**

12  RACHEL FREZZA and MAURO           CASE NO.  12-CV-00237-RMW
    RODRIGUEZ, on their own behalf and all
13  others similarly situated,         **MOTION TO DISMISS FIRST
                                       AMENDED COMPLAINT**
14              Plaintiffs,
                                       **Hearing Date: Friday March 15, 2013
15  v.                                 Time: 9:00 a.m.
                                       Before: Hon. Ronald M. Whyte**
16  GOOGLE INC.,
                                       Complaint filed: January 13, 2012
17              Defendant.

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

PLAINTIFFS' ALLEGATIONS .......................................................................................... 2

    A.    Google offers a 30-day free trial of its Tags service limited to a one-time
$25 credit .................................................................................................... 2

    B.    The Court dismisses Plaintiffs' initial complaint.................................... 2

    C.    The First Amended Complaint................................................................... 3

ARGUMENT ....................................................................................................................... 3

I.    The FAC Has Not Adequately Pleaded A Breach Of Any Contract ................................. 4

    A.    Nothing in the offer's terms and conditions suggests that Plaintiffs were
entitled to an unlimited amount of free advertising ................................. 4

    B.    The blog post and snippet Plaintiffs Point to  are not offers................................. 6

II.    The FAC Does Not Adequately Plead A UCL Violation ................................................. 7

    A.    Plaintiffs have not alleged that they saw any allegedly misleading
advertisement. ............................................................................................ 7

    B.    Plaintiffs have not pleaded a false or misleading statement ................................. 8

        1.    Plaintiffs have not adequately pleaded how any statement was false
or misleading.................................................................................. 8

        2.    Plaintiffs' complaint does not satisfy Rule 9(b) because they
cannot identify with particularity what they saw or when ........................ 9

    C.    Because they don't allege any facts showing how Google broke any laws
or why they have a right to unlimited free advertising, Plaintiffs have not
pled any "unlawful" or "unfair" conduct ............................................. 10

    D.    Because they are North Carolina citizens who were allegedly injured in
North Carolina, Plaintiffs cannot assert California UCL claims ....................... 11

III.    The FAC Does Not Adequately Plead An Implied Contract Claim ............................... 13

    A.    Plaintiffs lack Article III standing because they have failed to plead a
concrete and particularized injury-in-fact ............................................... 13

    B.    Plaintiffs also have failed to plead contract damages ........................................... 15

    C.    Like Plaintiffs' original complaint, the FAC pleads no facts suggesting
that Google ever contemplated applying DSS standards, much less agreed
to follow them ....................................................................................... 16

**TABLE OF CONTENTS**
**(continued)**

Page

IV.   Amendment Would Be Futile Here ..................................................................................... 18

CONCLUSION........................................................................................................................... 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amer. Bldg. Maintenance Co v. Indemnity Ins. Co. of N. Am.*,
   214 Cal. 608 (1932) ...........................................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................3, 4, 11

*Baltasar v. Apple, Inc.*,
   No. 10–CV-03231-WHA, 2011 WL 6747884 (N.D. Cal. Dec. 22, 2011) ................................4

*BancFirst v. Dixie Restaurants, Inc.*,
   No. CIV-11-174-L, 2012 WL 12879 (W.D. Okla. Jan. 4, 2012)............................................17

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................................1, 10

*Cohen v. DIRECTV, Inc.*,
   178 Cal. App. 4th 966 (2009) ...............................................................................................8

*Cullen v. Valley Forge Life Ins.*,
   589 S.E.2d 423 (N.C. Ct. App. 2003) ................................................................................12

*Daugherty v. Am. Honda Motor Co.*,
   144 Cal.App.4th 824 (2006) ...............................................................................................11

*Douglas v. U.S. Dist. Court for Cent. Dist. of California*,
   495 F.3d 1062 (9th Cir. 2007) ..............................................................................................7

*Edgar v. MITE Corp.*,
   357 U.S. 624, 644 (1982).....................................................................................................13

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
   703 F.2d 534 (9th Cir. 1984) ................................................................................................6

*Frankel v. Bd. Of Dental Exam'rs*,
   46 Cal. App. 4th 534 (1996) ...............................................................................................16

*Freeman v. Time*,
   68 F.3d 285 (9th Cir. 1995) ..............................................................................................8, 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)............................................................................................................14

*Gregory v. Albertson's, Inc.* (2002)
   104 Cal.App.4th 845 ...........................................................................................................11

*Hernandez v. Burger*,
  162 Cal. Rptr. 564, 568 (1980) .................................................................................13

*Horvath v. LG Elec. Mobilecomm U.S.A., Inc.*
  2012 WL 2861160 (S.D. Cal. 2012) ..........................................................................13

*In re Doubleclick, Inc. Privacy Litig.*,
  154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........................................................................15

*In re Gilead Sciences Securities Litig.*,
  536 F.3d 1049 (9th Cir. 2008) .....................................................................................3

*In re iPhone Application Litig.*,
  2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ...........................................................14

*In re JetBlue Airways Corp. Privacy Litig.*,
  379 F. Supp. 2d 299 (E.D.N.Y. 2005) ..................................................................15, 16

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ............................................................................................7, 12

*Kaplan v. Rose*,
  49 F.3d 1363 (9th Cir. 1994) ...................................................................................9, 10

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .................................................................................9, 10

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) .....................................................................................5

*Korea Supply v. Lockheed Martin Corp.*,
  63 P.3d 937 (Cal. 2003) .............................................................................................12

*Kwikset Corp. v. Superior Court*,
  246 P.3d 877 (Cal. 2011) ...........................................................................................12

*LaCourt v. Specific Media, Inc.*,
  2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ............................................................14

*Laster v. T-Mobile USA, Inc.*,
  407 F. Supp. 2d 1181 (S.D. Cal. 2005) ........................................................................8

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) .......................................................................................9

*Lonely Maiden Prods., LLC v. Golden Tree Asset Mgmt., LP*,
  201 Cal.App.4th 368 (2011) .................................................................................16, 17

*Lonergan v. Scolnick*,
  129 Cal. App. 2d 179 (1954) ........................................................................................6

*Low v. Linkedin Corp.*,
  2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ........................................................15

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ..........................................14

*Mazza v. American Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ...............................................................7, 11, 12, 13

*McCann v. Foster Wheeler LLC*,
  48 Cal.4th 68, 81-82 (2010) ...................................................................................12

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) ..................................................................................3

*Mesaros v. United States*,
  845 F.2d 1576 (Fed. Cir. 1988) ............................................................................6, 7

*Parrino v. FHP, Inc.*,
  146 F.3d 699 (9th Cir.1998) ...............................................................................5, 18

*Pfizer Inc. v. Superior Court*,
  182 Cal. App. 4th 622, 632 (2010) ...........................................................................7

*Retired Emps. Assn. of Orange Cnty. v. Cnty. of Orange*,
  52 Cal.4th 1171, 1178 (Cal. 2011).........................................................................17

*Ross v. Frank W. Dunne Co.*,
  119 Cal.App.2d 690 (1953) .....................................................................................15

*Scott v. Pacific Gas & Electric Co.*,
  11 Cal.4th 454 (1995) .............................................................................................15

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ....................................................................................3

*Texas v. United States*,
  523 U.S. 568 (1985)................................................................................................14

*Tucker v. Boulevard at Piper Glen, LLC*,
  564 S.W.2d 248 (2002)...........................................................................................12

*Washington Mut. Bank, NA v. Sup. Ct.*,
  24 Cal.4th 906 (2001) .............................................................................................12

*Wilson v. Blue Ridge Elec. Membership Corp.*,
  578 S.E.2d 692 (N.C. Ct. App. 2003) .....................................................................12

*Woods v. Google Inc.*,
  2011 WL 3501403 (N.D.Cal. Aug. 10, 2011) ........................................................11

-iii-

*Yingling v. eBay, Inc.*,
    2009 U.S. Dist. LEXIS 131776 (N.D. Cal. Nov. 4, 2009)........................................................10

*Young v. U.S. Dep't of Justice*,
    882 F.2d 633, 641 (2d Cir.1989)...........................................................................................16

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180, 1187, *amended*, 273 F.3d 1266 (9th Cir. 2001)..........................................13

**STATUTES AND RULES**

Business and Professions Code §§ 17200, et seq., 17500, et seq. ..............................................10

Cal. Bus. & Prof. Code § 17203 ..................................................................................................12

Cal. Bus. & Prof. Code § 17204 ....................................................................................................7

N.C. Gen. Stat. § 75-16...............................................................................................................12

N.C. Gen. Stat. § 75-16.1............................................................................................................12

N.C. Gen. Stat. § 76-16...............................................................................................................12

**OTHER AUTHORITIES**

1 WILLSTON ON CONTRACTS, § 4:10 (4th Ed. 2012)......................................................................6

1 WILLSTON ON CONTRACTS, § 4:13 (4th Ed. 1990)......................................................................6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 15, 2013, at 9:00 a.m., before the Honorable Ronald M. Whyte, Defendant Google Inc. will and hereby does move to dismiss Plaintiffs' First Amended Complaint (Dkt. 36).  Google's motion is based on this notice, the accompanying memorandum of points and authorities, the Declaration of Brianna Brekke Caputo, Google's Request for Judicial Notice, arguments of counsel and any other matters that the Court deems appropriate.

**INTRODUCTION**

Like its predecessor, Google's First Amended Complaint ("FAC") presses claims against Google's Tags program that fail to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The FAC asserts breaches of supposed express and implied agreements that it does not adequately plead, and complains about supposed misrepresentations that it does not adequately identify.

Plaintiffs allege that Google breached a promise to provide free, unlimited use of Google Tags for a 30-day trial period. There was no such promise, and Google performed the promise it did make. Like the original complaint, the FAC neither attaches nor alleges the trial offer's terms, which alone requires dismissal of the contract claim.  Instead of the contract, Plaintiffs reproduce a blog post and a snippet from a landing page for Google Business Solutions, which they suggest "constitute the terms of an offer by Google … for enrollment in the Tags free trial." FAC ¶ 53.  But an ad is not a contract offer.  Moreover, the actual terms of the offer explained that it was "limited to one tag per account" because it took the form of "a $25 credit" that could be used either to "run one tag for one month" or (if the customer wanted to "activate multiple tags") could "be spread between the tags."  *See* Declaration of Brianna Brekke Caputo Dec. Ex. 1 (emphasis added).  What the FAC characterizes as a breach was Google's compliance with these terms.  That is no breach, and the contract claim should be dismissed for that reason as well.

Plaintiffs' second claim, which invokes the California Unfair Competition Law ("UCL"), is defective on its face because it relies on advertisements that neither Plaintiff claims to have seen.  In any event, Plaintiffs do not plead any false or misleading statements by Google, much less with the requisite particularity.  And as North Carolina citizens who saw and acted upon the ads in North Carolina, Plaintiffs cannot assert claims under California consumer statutes.

Finally, Plaintiffs' implied contract claim is equally defective.  Plaintiffs lack standing because they have not alleged any cognizable injury resulting from Google's retention of their credit card information.  And they again have not adequately pleaded that Google ever promised—implicitly or otherwise—to delete such information upon request.

The FAC does nothing to cure the deficiencies in the complaint that this Court dismissed. Further leave to amend should be denied.

PLAINTIFFS' ALLEGATIONS

**A.      Google offers a 30-day free trial of its Tags service limited to a one-time $25 credit.**

Plaintiffs allege that Google offered a service called "Google Tags" to merchants in cities across the United States from February 2010 through April 2011.  FAC ¶ 16.  Tags was an online feature, designed to provide a business that advertised its products or services on the Internet a way to showcase one or more of the business's distinguishing features and thereby increase the number of visitors to its website.  *Id.*  If a business used Google Tags, its name and other information—such as special promotions, photographs, or a link to its web site—would be displayed prominently on the Internet.  *Id.* at ¶ 17.

For a limited time starting in July 2010, Google offered businesses a special pricing promotion for Tags.  *Id.* at ¶ 19.  Plaintiffs allege that two promotional "exemplar[s]"—a blog post and a snippet from the landing page for Google Business Solutions—"constitute the terms of an offer by Google … for enrollment in the Tags free trial" that they accepted.  FAC ¶¶ 21-23, 53.  But, while the complaint repeatedly references a "Contract" made between Plaintiffs and Google (FAC ¶¶ 54, 55, 61), it does not quote or attach the incorporated offer terms.  Those terms were included on a Google Help Center page setting out the details of the promotion that was available during the promotional period:

> The Google Tags 30-day free trial is available to new tags customers **and is limited to one tag per account**.  This promotion is **a $25 credit** that is applied to your account.  There are [two] different ways to obtain the $25:
>
> • run **one tag** for one month
> • activate multiple tags for multiple business listings: **your $25 will be spread between the tags**
>
> … A credit card is required in the sign-up process, but you will not be billed unless you decide to keep running Tags after the 30-day offer or $25 of credit has been used.
>
> Promotional credit allows for $25.00 of free Google Tags advertising (equal to 30 days free for one listing).  This credit can be spent on one tag listing, or it can be applied across multiple tags listings and $25.00 will be deducted from your monthly billing statement.  Advertisers will be charged for advertising that exceeds the promotional credit, which is $25.00, per listing, per month … .

Caputo Dec. Exh. 1 (emphasis added).

Plaintiffs allege that Google "deceptively" charged them for their use of multiple tags "during the term of the free Tags trial period."  *See* FAC ¶¶ 3, 58.  Plaintiffs also allege that Google required them to provide a credit-card number when signing up for Google Tags, and yet later refused Plaintiffs' request to destroy or delete that information from its "billing system."  *Id.* ¶ 5.

### B.   The Court dismisses Plaintiffs' initial complaint.

Plaintiffs' initial complaint alleged that Google overcharged them and refused to delete their credit card information in ways that were inconsistent with their contract.  Based on these allegations, Plaintiffs asserted five claims against Google: (i) breach of contract; (ii) breach of implied contract (iii) unjust enrichment; (iv) violation of the California Consumers Legal Remedies Act; and (v) violation of the California Consumer Records Act.  This Court dismissed all of these claims, the latter three with prejudice.  Dkt. 31.

The Court dismissed the contract claim because Plaintiffs failed to "quote the operative language of the purported contract or at least the substance of what they were told that was reasonably susceptible to the interpretation they assert."  *Id.* at 4.  The Court noted that, "[s]ince Plaintiffs claim they entered into contracts with Google, they should be able to set forth the essential terms of those contracts."  *Id.*

The Court also dismissed Plaintiffs' implied contract claim—alleging that Google had agreed to follow third-party data privacy standards—for similar reasons.  The Court observed that "[n]o facts are alleged to support an inference that Google even contemplated, much less agreed to meet the DSS standards."  *Id.* at 6-7.  Finally, the Court held that, even if Google had agreed to "handle its customers' credit card information responsibly," Plaintiffs' claim still failed because "retaining information does not amount to handling it irresponsibly."  *Id.*

### C.   The First Amended Complaint

In the FAC, Plaintiffs re-allege their breach of contract and breach of implied contract claims.  Plaintiffs now also allege Google violated California's unfair competition law "by making representations … and omissions of material facts concerning the operation of the

Google Tags free trial promotion."  *See* FAC ¶¶ 66, 68, 73.

**ARGUMENT**

A complaint should be dismissed if it "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Although the Court must "accept" the complaint's allegations "as true," and afford the plaintiff benefit of "reasonable inference[s]," "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).  The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), or those "that contradict matters that are either subject to judicial notice or attached as exhibits to the complaint."  *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Because Plaintiffs have not alleged a "plausible claim for relief" under any theory, the FAC should be dismissed.  *Iqbal*, 129 S. Ct. at 1950.

**I.    The FAC Has Not Adequately Pleaded A Breach Of Any Contract.**

> **A.    Nothing in the offer's terms and conditions suggests that Plaintiffs were entitled to an unlimited amount of free advertising.**

Plaintiffs tellingly do not allege (much less attach) the actual terms of the Google Tags offer, which provides: "Advertisers will be charged for advertising that exceeds the [$25] promotional credit." Caputo Dec. Ex. 1. Plaintiffs—whose use exceeded their $25 promotional credits—allege that Google breached their contracts by "assessing charges to Plaintiffs … during the term of the free Tags trial period."  FAC ¶ 58.  This claim fails for several reasons.

First, although this Court already held that, "[s]ince plaintiffs claim they entered into contracts with Google, they should be able to set forth the essential terms of those contracts" (Dkt. 31 at 4), Plaintiffs still refuse to put that contract before the Court.  Instead, they attach a blog post and a snippet from the Google Business Solutions landing page.  But these promotional materials do not contain all of the terms and conditions of the offer.  Indeed, one of them makes clear that a prospective customer would have to click another link to "sign up" for the program and invites him or her to look at help center pages for more details.  FAC ¶ 21 ("To start your

- 4 -

free 30 day trial today, please visit our signup page or check out the help center for more details"). The FAC thus asserts a written contract without pleading its contents.

But "a plaintiff must allege the existence of an enforceable contract or contract term that a defendant purportedly breached.  In order to properly plead the existence of such a term, a plaintiff must either set forth in haec verba **all the terms** of the contract or state the legal effect of those terms."  *Kilaita v. Wells Fargo Home Mortg.*, No. 11-CV-00079-EJD, 2011 WL 6153148, at *4 (N.D. Cal. Dec. 12, 2011) (emphasis added).  If a plaintiff chooses "to plead a contract by its legal effect," the plaintiff still "must allege the substance of its relevant terms.  This … requires a careful analysis of the instrument, **comprehensiveness in statement**, and avoidance of legal conclusions." *Baltasar v. Apple, Inc.*, No. 10–CV-03231-WHA, 2011 WL 6747884, at *2 (N.D. Cal. Dec. 22, 2011) (emphasis added).  The Complaint falls far short of these standards.

Second, the written contract confirms that, by giving Plaintiffs a $25 promotional credit, Google did not breach the contract but performed exactly as promised.  Although the FAC omits the written contract, this Court may consider the actual contract at the pleadings stage because the Complaint includes numerous references to it, and makes a series of (misleading) representations about its substance.  FAC ¶¶ 10 ("promotional offer"); 54 ("a contract was formed"); 58 ("Google breached the Contract"); 61 ("The Contract includes a covenant of good faith and fair dealing").  Under the "incorporation by reference" doctrine, the Court may " take into account documents whose contents are alleged in a complaint … but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation and quotation omitted).  The Ninth Circuit has instructed district courts to apply this doctrine to preclude "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998).

During the entire promotional period, the Promotion Terms that applied to advertisers were the same.  Caputo Dec. ¶ 9.  That offer unambiguously limited the 30-day trial to a single "$25 credit" that amounts to "one tag per account." *See* page 1, *supra* (quoting Caputo Dec. Ex.

1); *see also* Caputo Dec. ¶ 6-10.

Every Google Tags advertiser who accepted the promotional offer was bound by its "Terms and Conditions," which provided that use of "Google Tags [is] subject to "acceptance of the ... [offer's] terms and conditions."   Caputo Dec. Ex. 1.   Those Terms and Conditions provided:

> Promotional credit is only valid when signing up for new Google Tags listings. **Promotional credit allows for $25.00** of free Google Tags advertising (**equal to 30 days free for one listing**). This credit can be spent on one tag listing, or it can be applied across multiple tags listings and $25.00 will be deducted from your monthly billing statement. **Advertisers will be charged for advertising that exceeds the promotional credit, which is $25.00, per listing, per month**. If you don't want to be charged for the additional months, you can pause your tags at any time and your charges will be pro-rated for that month. **Google Tags are subject to** ad approval, valid registration and **acceptance of the Google Places and Google Tags Program terms and conditions**. The promotional credit is non-transferable and may not be sold or bartered. Offer may be revoked at any time for any reason by Google Inc. **One promotional credit per customer**.

Caputo Dec., Exh. 1 (emphasis added).  *See also* Request for Judicial Notice, Ex. 1-3.

These plain Terms defeat Plaintiffs' contract claim.  "One" promotional credit does not mean "unlimited" credits.   Google provided Plaintiffs exactly what it promised:   a $25 promotional credit that advertisers could use to run "multiple tags for multiple business listings" with the $25 credit "spread between the tags."   Plaintiffs do not dispute that they signed up for multiple Google Tags for multiple business locations.   Nor do they dispute that Google provided them with a $25 credit.   Because Plaintiffs have not identified a breach, they have not stated a contract claim.

**B.     The blog post and snippet that Plaintiffs quote are not offers.**

Rather than provide the Court with their contracts, Plaintiffs argue that two promotional "exemplar[s]"—a blog post and a snippet from the landing page for Google Business Solutions—"constitute the terms of an offer by Google … for enrollment in the Tags free trial" that they accepted. FAC ¶¶ 21-23, 53.  That is not so.

First, it is black-letter law that an advertisement is not an offer.  1 WILLSTON ON CONTRACTS, § 4:10 (4th Ed. 2012).  "It is well established that [promotional] materials … are mere notices and solicitations for offers which create no power of acceptance in the recipient."

*Mesaros v. United States*, 845 F.2d 1576, 1580 (Fed. Cir. 1988); *accord Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 539 (9th Cir. 1984); *Lonergan v. Scolnick*, 129 Cal. App. 2d 179, 182-183 (1954).  Because neither the blog post nor the snippet was an offer, they could not be "accepted" by Plaintiffs to form a binding contract.  *See Mesaros*, 845 F.2d at 1581-82.

Second, even the FAC acknowledges that these promotional materials do not contain all of the promotional offer's Terms and Conditions.  For example, the promotional offer's requirement that Plaintiffs provide credit card information to enroll in the Tags service (*see* FAC ¶ 81) does not appear in materials that Plaintiffs provide as "exemplars" of Google's offer.  *Id.* ¶ 21.  And the blog post directs anyone who wants "[t]o start your free 30 day trial today" to "visit our signup page or check out the help center for more details."  *Id.* ¶ 23.

Third, because Plaintiffs do not allege that they actually saw these "exemplars," much less acted upon them, those documents cannot form the basis of a contractual relationship between the parties. "[A]n offeree cannot actually assent to an offer unless he knows of its existence."  *Douglas v. U.S. Dist. Court for Cent. Dist. of California*, 495 F.3d 1062, 1066 (9th Cir. 2007) (citing 1 WILLISTON ON CONTRACTS § 4:13, at 365 (4th ed.1990)); *accord, Amer. Bldg. Maintenance Co v. Indemnity Ins. Co. of N. Am.*, 214 Cal. 608, 615 (1932) (where offer "never reached the person having authority to accept the same, … necessarily there was no acceptance, no consent, and consequently, no binding contract").  This claim fails.

## II.    The FAC Does Not Adequately Plead A UCL Violation.

### A.    Plaintiffs have not alleged that they saw any allegedly misleading advertisement.

Under the UCL, a plaintiff must plead and prove that he "has suffered an injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  To press a UCL claim based on a misrepresentation, he must plead and prove "actual reliance" on the alleged misrepresentation.  *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009).  Plaintiffs allege that Google committed "fraudulent business act [sic] or practices" by making representations … and omissions of material facts concerning the operation of the Google Tags

free trial promotion."  FAC ¶ 73. But "a consumer who was never exposed to an alleged false or misleading" advertisement cannot recover under the UCL.   *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 596 (2012) (quoting *Pfizer Inc. v. Superior Court*, 182 Cal.App.4th 622, 632 (2010).   And, while Plaintiffs provide two "exemplar[s]" of the kinds of statements they allege Google made regarding the Tags promotion (FAC ¶¶ 21, 23), Plaintiffs do not allege that they saw (much less relied on) either.  California law does not "authorize an award ... on behalf of a consumer who was never exposed in any way to an allegedly wrongful business practice."  *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 980 (2009).  Accordingly, this claim should be dismissed.[1]

### B.   Plaintiffs have not pleaded a false or misleading statement.

#### 1.   Plaintiffs have not adequately pleaded how any statement was false or misleading.

To state a claim for fraudulent conduct under the UCL, a plaintiff must first show that members of the public were likely to be deceived by the business practice or advertising at issue. *Freeman v. Time*, 68 F.3d 285, 289 (9th Cir. 1995).  Yet Plaintiffs have not identified a single misrepresentation.  Plaintiffs plead several statements by Google (appearing in advertisements they never say they saw) that describe the 30-day free promotion:

- "The chance to **try Google Tags free for 30 days!**"
- "Your free trial comes with no strings attached."
- "You can cancel before your trial is over and never pay a dime."

FAC ¶ 22.  (emphasis in original).  But they have not explained how any of these statements is false or misleading.  These representations say only that Google offered a "free trial" with no commitment "for 30 days!"  *Id.*  Plaintiffs plead that Google offered a 30-day "free trial … limited to *one location* per customer during the trial period."  FAC ¶ 26 (emphasis in original).  But that the promotion was not **unlimited** does not make it any less **free**.  Nor does it render false the statement that an advertiser "can cancel before your trial is over and never pay a dime."

---

[1]  *See Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (dismissing UCL claim for lack of standing because "none of the named plaintiffs allege that they saw, read, or in any way relied on the advertisements" attached to the complaint, "nor [did] they allege that they entered into the transaction as a result of those advertisements").

FAC ¶ 22.  Because Plaintiffs cannot identify a single statement implying that the promotion offered an unlimited number of tags for an unlimited number of business locations, they have not pleaded a misrepresentation.

In addition, while Plaintiffs argue in conclusory fashion that they were misled by Google's "representations … and omissions" on its website regarding the Tags promotion, "no reasonable person" can be deceived as a matter of law where any ambiguity is "dispelled by the promotion as a whole." *Freeman*, 68 F.3d at 290.  This is especially so where promotional materials "expressly and repeatedly" refute the alleged misrepresentation. *Id.* at 289.

Here, Plaintiffs allege that certain unidentified Google advertisements misleadingly led them to believe that that the promotion entitled them to an unlimited number of tags for an unlimited number of business locations for a 30-day period. *See* FAC ¶ 12.  As set out above, however, the Google Tags offer expressly explained that the promotion was limited to one free tag for one business location per customer. *See* Caputo Dec. Ex. 1.  So too, the short and simple Terms and Conditions that governed the promotion disclosed that the promotion was not unlimited but rather a one-time $25 credit per customer.[2] *Id.*  No reasonable person could be deceived because the promotion expressly and repeatedly states the conditions that govern the offer, dispelling the supposed ambiguity that Plaintiffs characterize as misleading.[3]

### 2.   Plaintiffs' complaint does not satisfy Rule 9(b) because they cannot identify with particularity *what* they saw or *when*.

To support UCL claims with allegations of fraudulent conduct, Plaintiffs must also satisfy the heightened pleading standards of Rule 9(b), no matter which prongs of the UCL they purport to invoke. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125, 1127 (9th Cir. 2009).  To do that, they must state precisely the "time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.

---

[2] *See* Caputo Dec. Ex. 1 ("**Promotional credit allows for $25.00 of free Google Tags advertising** (equal to 30 days free for one listing). This credit can be spent on **one tag listing**, or it can be **applied across multiple tags** listings and $25.00 will be deducted from your monthly billing statement.") (emphasis added).

[3] *See Lavie v. Procter & Gamble Co.*,  105 Cal.App.4th 496, 507 (2003) ("A representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed.") (citation omitted).

1994).  Their allegations fall short.

First, as discussed above, Plaintiffs do not plead with particularity that any representation was false or misleading.  Plaintiffs allege Google committed fraud by "making representations … and omissions of material facts" but do not identify any particular statements they saw, much less explain how those representations were misleading.  Instead they plead only their mistaken subjective belief "that they could enroll in a free trial program for Tags, at no cost, as long as they discontinued participation in the Tags program before the free trial ended."  FAC ¶ 12.  But Plaintiffs' allegation of a subjective mistake does not satisfy their burden to plead a material misrepresentation by Google.

Second, Plaintiffs have not pled with particularity **when** the statements were made or **who** made them.  Thus, while Plaintiffs generally allege that they "believed" that "the free trial" would apply to an unlimited number of Tags at an unlimited number of business locations, they do not identify any misleading statement by Google that caused this belief.  *See* FAC ¶ 12.  Nor do they establish the "time" or "place" when these alleged representations were made.  *Kaplan*, 49 F.3d at 1370; *see also Yingling v. eBay, Inc.,* 2009 U.S. Dist. LEXIS 131776, *16 (N.D. Cal. Nov. 4, 2009) (dismissing UCL claim for failing to satisfy Rule 9(b) where the complaint "fail[ed] to allege precisely what [] pages Plaintiffs viewed, when they viewed them, and whether they relied on them").  Rather, as with their contract claim, Plaintiffs try to state a claim without telling the Court "the substance of what they were told."  Dkt. 31 at 4.

C.     **Because they don't allege any facts showing *how* Google broke any laws or *why* they have a right to unlimited free advertising, Plaintiffs have not pled any "unlawful" or "unfair" conduct.**

Plaintiffs' claims seeking to cast Google's supposed misrepresentations as "unfair" or "unlawful" are equally subject to the Rule 9(b) standard.  *See Kearns*, 567 F.3d at 1127.  But even if they were not, the Rule 8 notice pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*

Plaintiffs allege that Google "committed unlawful practices by making representations … and omissions of material facts" concerning the operation of the Google Tags free trial promotion in violation of "Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16) and Business and Professions Code §§ 17200, et seq., 17500, et seq., and the common law." FAC ¶ 66.   But merely listing statutes does not satisfy Plaintiffs' burden of pleading that Google's conduct was unlawful.   Likewise, Plaintiffs allege that Google committed "unfair" business practices "by making representations … and omissions of material facts concerning the operation of the Google Tags free trial promotion, as set forth more fully herein." FAC ¶ 68. But Plaintiffs do not allege **what** "misrepresentations … and omissions" Google made or **how** those alleged misrepresentations are "unfair" under any recognized standard.   To the extent their claim of unfairness may be predicated on public policy, for the same reasons they have failed to plead unlawful conduct, they have failed to plead the "specific constitutional, statutory or regulatory provisions" to which that policy is tethered. *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002).   Such "naked assertion[s]" devoid of "further factual enhancement" cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).[4]

### D. Because they are North Carolina citizens who were allegedly injured in North Carolina, Plaintiffs cannot assert California UCL claims.

Plaintiffs' UCL claims should be dismissed without further leave to amend because, as North Carolina citizens allegedly injured in North Carolina, they cannot assert claims under California consumer protection statutes.   Under the choice-of-law principles of the forum state, California, each "consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza v. American Honda Motor*

---

[4] Even under the less stringent standard of unfairness applied by some California appellate courts, an act or practice is "unfair" only "if the consumer injury [1] is substantial, [2] is not outweighed by any countervailing benefit to consumers or to competition, and [3] is not an injury the consumers could reasonably have avoided."   *Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824, 839 (2006).   A plaintiff must allege facts to support all three elements, *id.*, but Plaintiffs here have not alleged facts in support of *any* element of their claim.   Moreover, "unless [Plaintiffs] can explain why [they] and other advertisers had a legal right to [unlimited free tags], [they] cannot show cognizable injury."   *Woods v. Google Inc.*, 2011 WL 3501403, at *7 (N.D.Cal. Aug. 10, 2011) (dismissing UCL claims for failure to state a claim).

1    *Co.*, 666 F.3d 581, 594 (9th Cir. 2012).[5]

2          When, as here, two states have potential interests in having their law applied, California

3    applies a three-step governmental interest analysis to examine potential conflict of law issues.

4    *Mazza*, 666 F.3d at 590-91 (citing *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 81-82 (2010)).

5    First, the court determines whether "the applicable rule of law in [the other] potentially

6    concerned state … materially differs from the law of California." *Id.* at 590.  Second, if there

7    are material differences, the court must determine whether each other state "has an interest in

8    having its own law applied." *Id.*  Third, if more than one state has a cognizable interest, the court

9    determines whether the interests of that state or those of California would be "'more impaired' if

10   its law were not applied." *Id.*  "[A] separate conflict of laws inquiry must be made with respect

11   to each issue in the case." *Washington Mut. Bank, NA v. Sup. Ct.*, 24 Cal.4th 906, 920 (2001).

12         North Carolina law materially differs from California consumer protection law.  For

13   example, under the UCL only the named plaintiff must have standing to bring a UCL claim on

14   behalf of a class,[6] while North Carolina consumer protection statutes require a showing of

15   "actual injury" for class members.[7]  So too, while named plaintiffs in a UCL action must plead

16   and prove "actual reliance,"[8] it is unclear whether North Carolina consumer protection statutes

17   require the same.[9]  The available remedies also differ materially.[10] These differences are not

18   "trivial or wholly immaterial.," *Mazza*, 666 F.3d at 591.

19   ───────────────
     [5]  Although some Google agreements contain choice-of-law provisions selecting California law,
20   Plaintiffs' claims here depend on the absence of any express contractual terms, seeking to make a
     blog post and an incomplete excerpt from the landing page for Google Business Solutions into
21   the basis for an agreement.
     [6] *In re Tobacco II Cases*, 46 Cal. 4th 298, 314-16 (2009).
22   [7] *See Wilson v. Blue Ridge Elec. Membership Corp.*, 578 S.E.2d 692, 694 (N.C. Ct. App. 2003)
     (actual injuries required for standing).
     [8] *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326-7 (Cal. 2011) (because the plaintiffs'
23   UCL claim sounds in fraud, they are required to prove "actual reliance on the allegedly deceptive
     or misleading statements") (quoting *Tobacco II*, 207 P.3d at 26 (internal quotation marks
24   omitted).
     [9] *Compare Cullen v. Valley Forge Life Ins.*, 161 N.C. App. 570, 579-80 (N.C. Ct. App. 2003)
25   (indicating that proof of reliance is not required) *with Tucker v. Boulevard at Piper Glen, LLC,*
     564 S.W.2d 248, 251 (2002) (stating actual reliance on alleged misrepresentation was required
26   for proximate causation).
     [10] *Compare* Cal. Bus. & Prof. Code § 17203 (injunction or restitution available under UCL);
27   *Korea Supply v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003) (same), *with* N.C. Gen.
     Stat. § 76-16 (actual damages); N.C. Gen. Stat. § 75-16 (treble damages); N.C. Gen. Stat. § 75-
28   16.1 (discretionary attorney's fees upon a finding that defendant's conduct was willful).

"Each of our states has an interest in balancing the range of products and prices offered to consumers with the legal protections afforded to them." *Mazza*, 666 F.3d at 592. North Carolina has an interest in applying its own laws to consumer transactions within its borders because "every state has an interest in having its law applied to its resident claimants." *Mazza*, 666 F.3d at 591-92 (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187, *amended*, 273 F.3d 1266 (9th Cir. 2001)). Moreover, North Carolina delineates the scope of recovery under its laws, according to its "different conceptions of what adequate compensation is." *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 314 (5th Cir. 2000). North Carolina and California's consumer fraud statutes differ precisely because each state has chosen a different balance between protecting its residents and maintaining economic growth and business development. *See Mazza*, 666 F.3d at 592; *Tucci v. Club Mediterranee, S.A.*, 89 Cal. App. 4th 180, 189-193 (2011). Federalism demands that North Carolina's policy judgments be honored in cases involving its own citizens. *Mazza*, 666 F.3d at 591 (citing *State Farm Mut. Auto Ins. Co. v. Cambell*, 538 U.S. 408, 422 (2003)).

*Mazza* makes clear that the governmental interest of North Carolina would be most impaired by the application of another state's law to claims like those of Plaintiffs—North Carolina citizens who were in North Carolina when they received the alleged misrepresentations and made their contracts. FAC ¶¶ 10-11; *see also Mazza*, 666 F.3d at 593. That holding applies squarely here. Moreover, California courts recognize that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *Mazza*, 666 F.3d 593 (quoting *Hernandez v. Burger*, 102 Cal. App. 3d 795, 801-802 (1980)). Conversely, "California's interest in applying its law to residents of foreign states is attenuated." *Id.* (citing *Edgar v. MITE Corp.*, 357 U.S. 624, 644 (1982)).

That analysis precludes any UCL claim by these North Carolina Plaintiffs. *See Horvath v. LG Elec. Mobilecomm U.S.A., Inc.* 2012 WL 2861160, at *3 (S.D. Cal. 2012) (dismissing out-of-state plaintiffs' claims under the UCL and other California statutes).

**III.    The FAC Does Not Adequately Plead An Implied Contract Claim.**

Plaintiffs allege that Google breached an "implied agreement" that it would adhere to the Data Security Standards ("DSS") promulgated by the Payment Card Industry Security Standards Council with respect to retention and deletion of their credit card information. FAC ¶ 83. This claim fails for multiple reasons.

### A.    Plaintiffs lack Article III standing because they have failed to plead a concrete and particularized injury-in-fact.

To press a claim in federal court, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual and imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Plaintiffs' implied contract claim fails because they have not alleged injury-in-fact or redressability.

First, Plaintiffs cannot meet the injury-in-fact requirement by pleading an abstract, hypothetical or speculative injury. Plaintiffs plead general facts about identify theft, but do not allege that they have suffered identify theft. *See* FAC ¶¶ 35-38. Rather, they simply assert that their credit card information is "placed at serious and ongoing risk" by Google's retention of this information. FAC ¶ 39. This kind of hypothetical injury does not satisfy Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[A]n injury in fact [must be] actual or imminent, not conjectural or hypothetical.") (quotation omitted). Nor would such a speculative injury—one which might never occur—be ripe for adjudication. *Texas v. United States*, 523 U.S. 296, 300 (1985) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (citation omitted). For similar reasons, claims challenging allegations about the mere collection and retention of personal information have been dismissed for lack of standing.[11]

---

[11] *See LaCourt v. Specific Media, Inc.*, 2011 WL 1661532, at *2-6 (C.D. Cal. Apr. 28, 2011) (finding no Article III standing where plaintiffs gave no "particularized example" of how secret collection and retention of browsing history caused injury or harm); *In re iPhone Application Litig.*, 2011 WL 4403963, *5 (N.D. Cal. Sept. 20, 2011) (holding plaintiffs lacked standing because they did not "identif[y] a concrete harm from the alleged collection and tracking of their personal information sufficient to create injury in fact.").

Second, Plaintiffs cannot satisfy the injury-in-fact requirement with the conclusory allegation that they somehow "overpaid for the services provided by Google" because "a portion of the services purchased by [Plaintiffs] necessarily included the timely deletion" of their credit card information.  FAC ¶ 87.  Plaintiffs have pled no facts supporting the notion that whatever "services" Google provided through Tags "necessarily included" deleting their credit card information, nor that any portion of the payments Plaintiffs made for Tags was attributable to some alleged, and nonexistent promise of deletion of credit card information.

Nor can they manufacture Article III standing by assigning economic value to their credit card information or otherwise inventing a novel property interest.  Courts have dismissed cases for lack of injury under Article III where plaintiffs have complained of losses associated with the unauthorized collection and/or disclosure of allegedly personal information.  *See In re Google, Inc. Privacy Policy Litigation*,  2012 WL 6738343, *6 (N.D. Cal. Dec. 28, 2012) (dismissing claims in light of Plaintiffs' failure to allege fact sufficient to confer Article III standing); *Low v. Linkedin Corp.*, 2011 WL 5509848, *5 (N.D. Cal. Nov. 11, 2011) (holding plaintiff "failed to allege facts sufficient to support his theory of harm" arising from retention and disclosure of personal information by website); *In re Doubleclick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) (holding unauthorized collection of personal information by third-party is not "economic loss"); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) (holding there is "no support for the proposition that an individual['s] personal information has or had any compensable value in the economy at large").

Here, there is no allegation here that Google unlawfully collected or disclosed Plaintiffs' credit card information.  Indeed, Plaintiffs admit that they willingly gave Google their credit card information and do not allege that Google has unlawfully disclosed, lost, or mishandled that information.  Plaintiffs therefore have "failed to allege facts that demonstrate that [they were] economically harmed by [Google's] practices."  *Low*, 2011 WL 5509848 at *5.  Accordingly, they lack standing for failure to allege an injury-in-fact.

**B.      Plaintiffs also have failed to plead contract damages.**

For the same reasons, Plaintiffs' claim should also be dismissed because they have failed to sufficiently allege the damages element of their implied contract claim.  It is "fundamental" that contract damages "which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery."  *Scott v. Pacific Gas & Electric Co.*, 11 Cal.4th 454, 473 (1995); *Ross v. Frank W. Dunne Co.*, 119 Cal.App.2d 690, 700-701 (1953) (finding that damages "must not be based on pure speculation or conjecture").  Uncertainty as to the very existence of economic damage is therefore fatal.

Here, the only damage that can be read into the present complaint is a speculative threat of **potential** damage.  It is "well-settled," however, that "recovery in contract, unlike recovery in tort, allows only for economic losses flowing directly from the breach."  *JetBlue*, 379 F.Supp.2d at 326-27 (citing *Young v. U.S. Dep't of Justice*, 882 F.2d 633, 641 (2d Cir.1989)).  Accordingly, Plaintiffs' implied contract claim fails for this reason as well.

**C.      Like Plaintiffs' original complaint, the FAC pleads no facts suggesting that Google ever contemplated applying DSS standards, much less agreed to follow them.**

This Court previously dismissed Plaintiffs' claim because "[n]o facts [were] alleged to support an inference that Google even contemplated, much less agreed to meet the DSS [Data Security Standard] standards."  Dkt. 31 at 7.  The FAC does nothing to cure this flaw.

First, there is no pleaded basis for an implied "covenant."  FAC ¶ 82.  Under California law, "implied covenants are not favored."  *Frankel v. Bd. Of Dental Exam'rs*, 46 Cal. App. 4th 534, 545 (1996).  Courts only will impose such agreements when there is a "basis in the express contract" between the parties "which makes it **necessary** to imply certain duties and obligations in order to effect the purposes" of the parties' contract.  *Id.* (emphasis added).  But Plaintiffs have alleged no facts that suggest it was necessary to achieve the purposes of their **advertising** contract for Google to adhere to DSS standards.  And, if such a necessity existed, then, as a practical matter, there would be no reason for the Payment Card Security Standards Council to make such recommendations in the first place.

Second, if an implied contract is not "indispensible to effectuating the parties'

intentions," then it must "arise[] from the contract's express language." *Lonely Maiden Prods.,* *LLC v. Golden Tree Asset Mgmt., LP*, 201 Cal.App.4th 368, 377 (2011). But no "implication" of DSS recommendations arises from the Terms and Conditions for Google Tags, nor from any other document or statement that Plaintiffs suggest formed a contract (such as the blog post or website snippet). The terms, snippet, and blogpost do not say anything about data retention or disposal. Because this is a required element of an implied contract claim, Plaintiffs' claim also fails for this additional reason. *Id.*

Third, a contract implied in fact consists of obligations "arising from a **mutual** agreement and intent to promise" where the agreement has not been expressed in words. Dkt. 31 at 6 (citing *Retired Emps. Assn. of Orange Cnty. v. Cnty. of Orange*, 52 Cal.4th 1171, 1178 (Cal. 2011) (emphasis added). Here, Plaintiffs allege that Google accepts payment through Visa, and that "[s]ome card issuers like Visa, contractually obligate merchants, like Google, to comply with various security standards that protect customer financial information as a condition of being permitted to process transactions." FAC  ¶ 31. But this conclusory statement does nothing to "show that Google made any indication that it adopted the DSS recommendations in its dealings **with plaintiffs**." Dkt. 31 at 7 (emphasis added). Plaintiffs do not allege that Google exhibited "an intent to promise" **them** that it would utilize DSS standards. Nor do Plaintiffs allege that Google has any contract with Visa specifically requiring Google to implement and adhere to such standards. At best, they suggest that Visa requires merchants "to comply with various security standards." FAC ¶ 31.[12]

Fourth, even if Google and Plaintiffs had entered into some general, implied agreement that Google would not abuse or neglect Plaintiffs' credit-card information, that agreement would not include the specific, detailed provisions of the DSS on which Plaintiffs base their claim.

---

[12] Plaintiffs also allege that the payment card industry ("PCI") of which Visa is a member promulgates "certain industry standards to its members," including the DSS, that require merchants "to implement a data retention and disposal policy." FAC ¶ 34. This is equally unhelpful to Plaintiffs. First, they do not allege that Google is a member of the PCI. Second, this paragraph does not allege that every member of the PCI specifically requires every merchant it does business with to adopt "Requirement 3.1 of the Data Security Standard." *Id.* Rather, this paragraph merely states that the DSS is one of "certain industry standards" that the PCI "promulgates." That comes nowhere close to establishing a contract in fact between Google **and Plaintiffs** requiring Google to specifically adhere to DSS regulations.

Many courts have rejected similar attempts to transform the DSS recommendations into legal obligations that may be foisted onto unsuspecting defendants. *See, e.g.*, *BancFirst v. Dixie Restaurants, Inc.*, No. CIV-11-174-L, 2012 WL 12879, at \*2-4 (W.D. Okla. Jan. 4, 2012) (denying recovery to plaintiffs, who asserted that merchants who accept Visa cards are negligent in failing to adhere to DSS recommendations, by holding that the industry recommendations reflect at most "general obligations" and not specific obligations to individual plaintiffs).

Finally, even assuming that Google had agreed to adhere to DSS standards, Plaintiffs have not alleged that Google has breached those standards by retaining their information. The complaint merely alleges that DSS standards require that merchants have a "quarterly automatic or manual process for identifying and securely deleting stored cardholder data that exceeds defined retention requirements." FAC ¶ 34. But the complaint does not allege **what** those "defined retention requirements" are, **how long** those requirements permit merchants to retain customer information, **when** plaintiffs cancelled their Google accounts, or **why** Google's retention of their information for a period of less than two years is a breach of those requirements. This claim too should be dismissed.

## IV.     Amendment Would Be Futile Here.

Plaintiffs have twice failed to state a claim. Nothing suggests that a third effort would succeed. On the contrary, Plaintiffs' inability to identify (or attach) any document containing obligations Google breached shows that they cannot amend their pleading to state a valid claim. And they cannot endlessly survive dismissal "by deliberately omitting reference to documents upon which their claims are based." *Parrino*, 146 F.3d at 706. Leave to amend therefore should be denied, and the case dismissed with prejudice.

CONCLUSION

For the foregoing reasons, the FAC should be dismissed without leave to amend.

Dated: January 28, 2013                          MAYER BROWN LLP


                                                 By:      /s/ Edward D. Johnson
                                                      EDWARD D. JOHNSON
                                                      DONALD M. FALK
                                                      JONATHAN A. HELFGOTT

                                                      *Attorneys for Defendant Google Inc.*