UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RACHEL FREZZA and MAURO RODRIGUEZ, on their own behalf and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.,<br><br>Defendant. | CASE NO. 5:12-cv-00237-RMW<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>[Re: Dkt. No. 37] |

## I. INTRODUCTION

Defendant Google Inc. ("Google") moves to dismiss plaintiffs Rachel Frezza and Mauro Rodriguez's First Amended Complaint ("FAC") for failure to state a claim for breach of contract, breach of implied contract and violation of California's unfair competition laws. Having considered the papers submitted by the parties, the arguments of counsel, and for the reasons set forth below, this court grants Google's motion to dismiss the breach of contract claims and unfair competition claims with one final leave to amend and dismisses the breach of implied contract claims with prejudice.

## II. BACKGROUND

This lawsuit relates to a promotional offer for a service, now discontinued, called Google Tags ("Tags") provided by Google to merchants around 2010. FAC ¶ 10-11, Dkt. No. 36. Tags was an online feature designed to enhance the appeal of and promote the distinctive aspects of a business on the Web. *Id*. ¶ 1, 11. A business listing with Tags was made to stand out from others through the use of a bright yellow "tag" icon that appeared next to the listing in Google search results. *Id*. ¶ 17. Accompanying this tag was additional information about the business, such as promotions, photos, videos, menus, or a link to the business's website. *Id*.

In order to introduce Google Tags to a wider pool of merchants, Google began a promotion offering a trial period of the service in July 2010. *Id*. ¶ 19. Plaintiffs allege that at all relevant times, Google conveyed the message to potential customers that they could try the Tags program for 30 days at no charge. *Id*. ¶ 20. As evidence, plaintiffs provide in the FAC a blog posting from July 2010 in which Google stated that it was "offering every business across the country the chance to try Google Tags free for 30 days!" and which described the promotion as a "free trial . . .with no strings attached." *Id.* ¶ 21. The blog further stated that "[y]ou can cancel before your trial is over and never pay a dime." *Id.* In order to start the 30 day trial, the blog directed the users: "To start your free 30 day trial today, please visit our signup page or check out the help center for more details." *Id.* A January 29, 2011 posting on Google Business Services makes similar representations, and contained a link to "learn more." *Id.* ¶ 23. Plaintiffs allege that their credit cards were nevertheless charged fees for using Tags within the "free" 30-day trial period. *Id*. ¶ 26. When plaintiffs contacted Google's customer service department, they were told that the trial offer consisted of a free 30-day trial period with respect to the use of Tags for only one business location, as opposed to free use of Tags for all locations during the 30-day period and, as a result, if a user utilized Tags on more than one business location during the trial period,

Google charged them $25 for each additional location. *Id*. In addition, plaintiffs contend that Google retained Plaintiffs' credit card information even after Google abolished the Tags service in April 2011. *Id*. ¶ 30.

Plaintiffs filed an original complaint alleging: (1) breach of contract, (2) unjust enrichment, (3) violation of the California Consumers Legal Remedies Act ("CCLRA"), (4) breach of implied contract, and (5) violation of the California Customer Records Act ("CCRA"). Google moved to dismiss the complaint for failure to state a claim. *See* First MTD, Dkt. No. 7. On November 20, 2012, the court granted Google's motion and dismissed counts 2 (unjust enrichment), 3 (violation of the CLRA), and 5 (violation of the CCRA) with prejudice; and counts 1 (breach of contract) and 4 (implied contract) with leave to amend.

Plaintiffs then filed an amended complaint, the FAC, reasserting the claims against Google for breach of contract (Count I) and breach of implied contract (Count III), and asserting new claims against Google for violation of California's unfair competition laws, California Business & Professions Code § 17200, *et seq.* ("UCL"). FAC ¶¶ 52-88. Google moves to dismiss all counts in the FAC. Def.'s Mot. 1-2, Dkt. No. 37.

### III. ANALYSIS

**A. Breach of Contract**

In the Order on the first motion to dismiss, the court dismissed plaintiffs' breach of contract claims and granted leave to amend "to quote the pertinent language of the contract they assert or at least the substance of what they were told which was reasonably susceptible of the interpretation that the first thirty days of any Tag for which they signed up in the promotion period was free." First MTD Order 4, Dkt. No. 31. Instead of quoting any "terms and conditions" of the contract at the time plaintiffs entered their credit card information (when the contract was allegedly formed, *see* FAC ¶ 54), the FAC incorporates the text of blog postings and

marketing materials describing the "free trial" and directing consumers to "visit [the] signup page" or "check out the help center." *Id.* ¶¶ 21-24. According to plaintiffs, these promotions constituted the terms of the offer, and Google breached the contract by subsequently charging them for the use of Tags. *Id.* ¶¶ 53-54.

Google moves to dismiss the breach of contract claim on the basis that the alleged promotional materials do not contain the terms and conditions of the contract. *See* Def.'s Mot. 4-7. Instead, Google argues that those who accepted the trial offers of Tags were bound by written terms and conditions that clearly stated that the promotional credit was for "$25.00, per listing, per month." *Id.* at 6. Finally, Google argues that even if the promotional materials formed the basis of the contract, plaintiffs have not alleged that they had seen those specific "exemplars" and an offeree cannot assent to an offer unless he is aware of it. *Id.* at 7.

In California, "[t]he standard elements of a claim for breach of contract are: '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.'" *Wall Street Network, Ltd. v. New York Times Co.,* 164 Cal. App. 4th 1171, 1178 (2008) (quoting *Regan Roofing Co. v. Superior Court* 24 Cal. App. 4th 425, 434–435 (1994)).[1] "Where a party relies in his complaint upon a contract in writing, and it affirmatively appears that all the terms of the contract are not set forth in *haec verba*, nor stated in their legal effect, but that a portion which may be material has been omitted, the complaint is insufficient." *Gilmore v. Lycoming Fire Ins. Co.,* 55 Cal. 123, 124 (1880); 1 Lane Goldstein Trial Technique § 3:12 (3d ed.) ("A complaint which does not identify the contract and the facts

---

[1] It appears that plaintiffs bring the breach of contract claim under California law. *See* FAC ¶ 60. Because the parties have not addressed the choice of law issue, the court does not rule on what laws should ultimately govern the contract claims in this case. However, it is unlikely to affect the final disposition of the issue.

constituting a breach of the contract is insufficient to maintain a claim for breach of contract."). "To plead the legal effect of a contract, plaintiffs must 'allege the substance of its relevant terms. This is more difficult [than pleading the precise language], for it requires a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions.'" *Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1094 (2007) (quoting *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1489 (2006)).

It is a well-established rule that an advertisement generally does not constitute an offer. *See* Restatement (Second) of Contracts § 26 cmt. b (1979) ("Advertisements of goods by display, sign, handbill, newspaper, radio or television are not ordinarily intended or understood as offers to sell."); 1 Arthur Linton Corbin & Joseph M. Perillo, Corbin on Contracts § 2.4, at 116–17 (rev. ed. 1993) ("It is quite possible to make a definite and operative offer to buy or sell goods by advertisement, in a newspaper, by a handbill, a catalog or circular or on a placard in a store window. *It is not customary to do this, however; and the presumption is the other way.*") (emphasis added)). "The operative question under California law, therefore, is simply 'whether the advertiser, in clear and positive terms, promised to render performance in exchange for something requested by the advertiser, and whether the recipient of the advertisement reasonably might have concluded that by acting in accordance with the request a contract would be formed.'" *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 787 (9th Cir. 2012). In *Sateriale*, the court recognized that, in those cases where the offer is accepted by rendering a performance rather than providing a promise, an advertisement could form the basis of a unilateral contract if a party renders the performance. *See id.*

In this case, plaintiffs contend that Google's promotional materials formed a binding offer. However, these promotional materials directed the plaintiffs to a signup page or a help page to learn more about the promotion. FAC ¶ 21 ("To start your 30 day trial period today, please visit

ORDER GRANTING MOT. TO DISMISS FAC
CASE NO. C-12-00237-RMW
SG/ALG

- 5 -

our signup page or check out the help center for *more details*." (emphasis added)). No reasonable person would understand visiting the "signup page" or the "help center" as being the performance sought in return for the offer of 30 days of free Tags. That the promotional materials were not contemplated to constitute an offer is clear from the undisputed fact that they made no mention of the requirement to provide credit card information. Even the plaintiffs acknowledge that "[i]n order to commence enrollment in the Google Tags program . . . Google required the customers to first provide a credit card (and associated information, including credit card expiration date)." FAC ¶ 29. Indeed, the FAC alleges that the contract was formed at the time of enrollment. FAC ¶ 54 ("Each time Plaintiffs and the other members of the Tags Trial Period Class enrolled in the Tags trial period, a contract was formed."). Since the terms and conditions of the contract were presented at the time of enrollment, and not through the promotional materials, plaintiffs must present the contractual terms agreed upon *at the time of enrollment* in order to survive Google's motion to dismiss. Because such terms are missing, plaintiffs have neither provided the entire contract verbatim nor adequately stated its complete legal effect, and thus, plaintiffs again fail to plead the existence of a contract. *See Parrish*, 534 F. Supp. 2d at 1095 (explaining that plaintiffs cannot rely on statements that "were not part of any contracts" to alleged the terms of the contract).

Although "'[a]ll allegations of material fact are taken as true and construed in the light most favorable to the moving party' . . . [t]he court is not obligated to accept every conclusory allegation as true." *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1166 (S.D. Cal. 2010). Rather, it "will examine whether conclusory allegations follow from the description of facts as alleged." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (quoting *Brian Clewer, Inc. v. Pan American World Airways, Inc.*, 674 F. Supp. 782, 785 (C.D. Cal. 1986)). The undisputed facts indicate that the promotional materials did not constitute binding offers. In order to properly

plead a breach of contract the plaintiffs must present the material terms and conditions of the contract in writing or in substance, and they have failed to do so twice. Nevertheless, the court dismisses plaintiffs' breach of contract claims with once final chance to amend.[2]

**B.     Breach of Implied Contract**

The court originally dismissed with leave to amend plaintiffs' implied contract claim for failing to show that Google was contractually bound by the Data Security Standards (DSS) rules promulgated by the "payment card industry" ("PCI"). The FAC includes allegations that, when plaintiffs provided their credit card information to Google, they entered into an implied contract with Google that it would abide by the DSS rules relating to retention and deletion of personal data. *See* FAC ¶¶ 31-34, 82. Plaintiffs' allegations still fail to connect the dots to establish the existence of an implied contract. For example, plaintiffs allege that Visa is a member of the PCI, that Visa contractually obligates merchants to comply with "various [unspecified] security standards," and that Google accepts Visa credit cards, but fail to allege that Visa obligated *Google* to abide by the *DSS rules* for these particular transactions, that plaintiffs even paid with Visa credit cards, or that any alternative credit provider otherwise would have contractually bound Google to abide by the DSS rules.

Even assuming, however, that Google was bound by the DSS rules with respect to these transactions, the court still dismisses plaintiffs' breach of implied contract claims for failure to satisfy the injury in fact requirement to support Article III standing. Speculative or hypothetical

---

[2] Since the plaintiffs failed to allege the material terms of the contract that Google allegedly breached, the court need not and does not address whether the written terms and conditions provided by Google are admissible or whether they formed the operative contract. For the same reason, the court does not the reach Google's argument that plaintiffs may not have seen the promotional materials cited in the FAC.

injury is not sufficient to confer Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[A]n injury in fact [must be] actual or imminent, not conjectural or hypothetical." (quotation omitted)). While in some instances "the injury in fact requirement can be satisfied by a threat of future harm or by an act which harms the plaintiff only by increasing the risk of future harm," *Krottner v. Starbucks Corp.,* 628 F.3d 1139, 1143 (9th Cir. 2010) (where plaintiffs alleged *publication and theft* of their personal data) (quoting *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007)), courts that have dealt with factually analogous cases have held that unauthorized *collection* of personal information, in the absence of disclosure, does not create an economic loss sufficient to create an injury in fact. *See, e.g.*, *Low v. LinkedIn Corp.*, 2011 WL 5509848, *6 (N.D. Cal. Nov. 11, 2011) (holding that, unlike in *Krottner*, where there are no allegations that highly sensitive personal data has been stolen or exposed to the public, plaintiff fails to allege injury in fact); *see also In re Google, Inc. Privacy Policy Litigation*, 2012 WL 6738343, *6 (N.D. Cal. Dec. 28, 2012) (dismissing plaintiffs' claims based on Google's policy of retaining personal information for lack of Article III standing); *In re Doubleclick, Inc., Privacy Litig.,* 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) (holding that unauthorized collection of personal information by a third-party is not "economic loss"); *In re JetBlue Airways Corp., Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) (explaining that airline's disclosure of passenger data to third party in violation of airline's privacy policy had no compensable value).

Plaintiffs' reliance on *In re Facebook Privacy Litigation*, 791 F. Supp. 2d 705 (N.D. Cal. 2011), is misplaced because that case involved *disclosure* of personal information as opposed to retention. *See id.* at 708. Unlike the present case, *In re Facebook* involved transfer of personal information to third-party advertisers without the user's consent. *Id.* ("Plaintiffs allege that Defendant intentionally and knowingly transmitted personal information about Plaintiffs to third-party advertisers without Plaintiffs' consent."). Plaintiffs' reliance on *Doe 1 v. AOL, LLC*, 719 F.

ORDER GRANTING MOT. TO DISMISS FAC
CASE NO. C-12-00237-RMW
SG/ALG
- 8 -

Supp. 2d 1102 (N.D. Cal. 2010), is similarly misplaced. *Doe* involved allegations that the internet service provider had collected and disclosed members' undeniably sensitive information. *See id.* at 1109 ("Although AOL pulled the database [containing personal information] from its website, the confidential information already had been posted on a number of public websites."). In these cases, the plaintiffs were exposed to increased risk of future harm proximately caused by defendants' *actual publication or disclosure* of personal information. Here, on the other hand, there is no allegation that Google inappropriately disclosed the credit card information. Accordingly, plaintiff's breach of implied contract claim is dismissed for failure to allege an injury in fact. Because the plaintiffs have twice failed to allege injury in fact, the court dismisses this claim with prejudice.

**C. UCL Claims**

Plaintiffs' FAC also contains new claims under California's UCL. FAC ¶ 64-79. Plaintiffs allege that Google's representations made in the promotional materials constituted "unlawful," "fraudulent," or "unfair" business acts or practices. *Id.* ¶ 66. Google moves to dismiss, arguing first that plaintiffs are precluded from asserting claims under California's UCL because they are North Carolina citizens who were allegedly injured in North Carolina. In the alternative, Google asserts that even if California laws applied, plaintiffs have not adequately plead fraud-based UCL claims because they have failed to satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b) by stating "precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." Reply 9, Dkt. No. 41 (quoting *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994)). Google also points out that plaintiffs failed to allege that they have *seen* the allegedly misleading advertisements. *Id.* at 1. Similarly, Google contends that the FAC does not adequately plead "unlawful" and "unfair"

ORDER GRANTING MOT. TO DISMISS FAC
CASE NO. C-12-00237-RMW
SG/ALG
- 9 -

business practices because it does not state what laws were broken or explain why Google's practice was unfair. *Id*. at 11-12.

### 1. *Mazza v. American Honda Motor Co.*

Defendants argue, relying on *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), that the North Carolina plaintiffs cannot avail themselves of California's consumer protection laws. In *Mazza*, the plaintiffs had successfully sought certification of a nationwide class, but the Ninth Circuit concluded that applying California law to non-residents who purchased their products outside of California was unwarranted. *Id.* at 591-94. In *Mazza*, the defendant Honda was headquartered in California and the allegedly fraudulent misrepresentations emanated from California, but the transactions (car purchases or leases) that directly caused the injury took place out of state with respect to the majority of the class members. *Id.* at 590. Despite the significant contacts with California, the Ninth Circuit held that "each class member's consumer protection claim should be governed by the consumer protection laws of the *jurisdiction in which the transaction took place*." *Id.* at 594 (emphasis added). As in *Mazza*, the defendant in this case, Google, is headquartered in California, and the allegedly fraudulent representations originated from California, but the *transactions* at the center of the dispute (enrollment in Tags) occurred in the plaintiffs' state of North Carolina. FAC ¶¶ 10-11. The factual analogy makes *Mazza*'s application of the choice-of-law rule to the facts of this case, not only relevant but controlling.

Plaintiffs attempt to distinguish Ninth Circuit's clear guidance on this issue by arguing that *Mazza* involved a motion for class certification, not a motion to dismiss. *See* Opp'n 16. But the principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss. *See Granfield v. NVIDIA Corp.*, 2012 WL 2847575, *3 (N.D. Cal. July 11, 2012) (recognizing that out-of-state plaintiffs injured outside of California cannot bring UCL claims);

*Waller v. Hewlett-Packard Co.*, 2012 WL 1987397, *1 (S.D. Cal. June 4, 2012) ("[U]nder *Mazza v. American Honda Motor Co.,* non-California residents can't avail themselves of California's consumer protection laws."); *Horvath v. LG Elecs. Mobile Comm. U.S.A.*, 2012 WL 2861160, *3-4 (S.D. Cal Feb. 13, 2012) (same). Applying the *Mazza* principles and California's choice-of-law analysis to the facts of this case, it is readily apparent that plaintiffs' UCL claims are precluded.

### 2. Choice-of-Law Analysis

California's choice-of-law rules require a three-step governmental interest test to determine which state's laws should apply. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 241-42 (2001). The court must first determine whether the law of the other state is materially different from California law. *Mazza*, 666 F.3d at 590. Second, if there is a difference, the court determines whether the other state has an interest in having its law applied. *Id.* at 591-92. Third, if the other state has an interest, the court determines which state's interest would be most impaired if its policy were subordinated to the law of another state. *Id.* at 593.

#### a. *Material differences*

Although neither North Carolina nor California requires scienter on part of defendant to plead a fraud-based violation of the consumer protection laws (as opposed to common law fraud, which requires scienter), *see In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) and *Stetser v. TAP Pharm. Prods.*, 165 N.C. App. 1, 20-21 (2004), material differences nonetheless exist between the two states' consumer protection laws. As in *Mazza*, the court finds the difference in available remedy under California law and North Carolina law to be a "material" difference for the purpose of the choice-of-law analysis. *See Mazza*, 666 F.3d at 591 (finding differences in remedies between California and other states to be material). Unlike under the UCL, where a plaintiff can only recover restitution and injunctive relief for fraud based claims, *see* Cal. Bus. & Prof. Code § 17203 and *Korea Supply v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003),

North Carolina provides mandatory treble damages and permits attorneys' fees upon a finding of willfulness, N.C. Gen. Stat. §§ 75-1.1, 75-16 (mandatory treble damages), 75-16.1 (attorney's fees). This court concludes that this difference in remedy is not trivial or wholly immaterial. *Accord Schwartz v. Lights of Am.*, 2012 WL 4497398, *6 (C.D. Cal. Aug. 31, 2012).[3]

Plaintiffs argue that further discovery is necessary to conclude whether the material differences between the two state laws matter in this case. Plaintiffs rely on *Forcellati v. Hylands, Inc.*, 876 F. Supp. 2d 1155 (C.D. Cal. 2012), to support their contention. In *Forcellati*, the court concluded that the mere reliance on *Mazza*, without "even discuss[ing] the differences between the consumer protection laws" of the states, is insufficient to support a dismissal. *Id.* at 1160. But *Forcellati* never suggested suggest that fact discovery is required to confirm material differences in the law between the state laws. Contrary to plaintiffs' contention, courts that have considered this issue have decided against deferring the choice of law decision until discovery. *See, e.g.*, *Rikos v. Procter & Gamble Co.*, 2012 WL 641946, *5 (S.D. Ohio Feb. 28, 2012) (rejecting plaintiff's request for further discovery on this issue and noting "whether the California statutes may constitutionally apply to non-resident class members who purchased [the product] in

---

[3] Google also argues that there is a difference between California and North Carolina law with respect to the necessity of showing reliance, asserting that California law requires a showing of reliance to establish UCL claims, whereas North Carolina law generally does not. *See Stetser*, 165 N.C. App. at 21 and *Cullen v. Valley Forge Life Ins.*, 161 N.C. App. 570, 580 (2003) ("[O]ur Courts have clearly held that actual deception is not an element necessary under N.C. Gen.Stat. § 75-1.1 to support an unfair or deceptive practices claim . . . . Accordingly, actual reliance is not a factor." (citations omitted)). However, under North Carolina jurisprudence, actual reliance must be shown to establish proximate causation where "an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant." *Bumpers v. Comm. Bank. of N. Va.*, 718 S.E.2d 408, 413 (N.C. App. 2011) (quoting *Tucker v. Boulevard at Piper Glen, LLC*, 150 N.C. App. 150, 154 (2002). Thus, there is no material difference between the two states' laws in a case such as this where the unfair competition is based on allegedly false and misleading statements. Also similar to North Carolina's law, *no reliance* is required to prove violations of the UCL based on "unlawful" or "unfair" conduct. *See Medrazo v. Honda of N. Hollywood*, 205 Cal. App. 4th 1, 12 (2012) ("[A]n actual reliance requirement does not apply to UCL actions that are not based upon a fraud theory."). Thus, the significant material difference here is the available remedy.

ORDER GRANTING MOT. TO DISMISS FAC
CASE NO. C-12-00237-RMW
SG/ALG
/

- 12 -

their home states is a largely legal determination."); *Route v. Mead Johnson Nutrition Co.*, 2013 WL 658251, *8-9 (C.D. Cal. Feb. 21, 2013) (rejecting plaintiff's request to defer ruling on this issue until the class certification stage because the matter is sufficiently obvious from the pleadings); *see also Hull v. Viega, Inc.*, 2013 WL 759376, *5 (D. Kan. Feb. 27, 2013) (declining to postpone decisions until the class certification stage where "many of the Rule 12(b) issues raised by Defendants appear to be curable by amending the Complaint"). Likewise, here, the court need not wait to decide whether material differences exist between the two states' laws, and as discussed above, concludes that they do, at least with respect to remedies.

### b. North Carolina's interest

The court also finds that North Carolina has an interest in applying its own law. As the *Mazza* court explained, "each foreign state has an interest in applying its law to transactions within its borders," which means that, "if California law were applied to [a nationwide class], foreign states would be impaired in their ability to calibrate liability to foster commerce." 666 F.3d at 593. This is consistent with the "principle of federalism that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders." *Id.* at 591 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 422 (2003)). Likewise, North Carolina has an interest in being able to delineate the appropriate standard of liability and the scope of recovery based on its understanding of the balance between the interests of individuals and corporate entities operating within its territory.

### c. Comparing the interests

The court further concludes that North Carolina's interests would be more impaired than California's if the other state's law were applied. "[T]he place of the wrong" has the predominant interest in regulating the conduct at issue. *Hernandez v. Burger*, 102 Cal. App. 3d 795, 801-02 (1980), *cited with approval by Abogados v. AT&T, Inc.*, 223 F.3d 932, 935 (9th Cir. 2000). The

"place of the wrong" is the state where the last event necessary to make the actor liable occurred. *Mazza*, 666 F.3d at 593 (citing *Zinn v. Ex–Cell–O Corp.*, 148 Cal. App. 2d 56, 80 n.6 (1957) (concluding in a fraud case that the place of the wrong was the state where the misrepresentations were communicated to the plaintiffs, not the state where the intention to misrepresent was formed or where the misrepresented acts took place)). As in *Mazza*, the last events necessary for liability—the communication of the advertisements to the plaintiffs and their reliance thereon in signing up for the trial period—took place in North Carolina, not in California. Hence, North Carolina has a strong interest in the application of its laws to transactions at issue. "Conversely, California's interest in applying its law to residents of foreign states is attenuated." *Mazza*, 666 F.3d at 594. Applying California's choice-of-law rules to the facts of this case, the court concludes that the North Carolina plaintiffs' consumer protection claims should be governed by the North Carolina consumer protection laws. The court therefore dismisses plaintiffs' UCL claims for a final opportunity to amend.

### 3. Sufficiency of Pleadings

Google also argues that the UCL claims must be dismissed for failing to adequately allege any false or misleading statement or any unlawful or unfair activity. Because the court dismisses the claims based on the choice of law analysis, the court does not address these arguments here.

### IV. ORDER

For the foregoing reasons, the court dismisses plaintiffs' breach of contract claim and unfair competition claims with leave for a final opportunity to amend and dismisses plaintiffs' breach of implied contract claim with prejudice.

Dated: April 22, 2013

*Ronald M. Whyte*
Ronald M. Whyte
United States District Court Judge

ORDER GRANTING MOT. TO DISMISS FAC
CASE NO. C-12-00237-RMW
SG/ALG
/
- 14 -